JAMES SEMPLE *et al.*, plaintiffs in error, *v.* JOHN ANDERSON *et al.*, defendants in error.

*Error to St. Clair.*

When a Circuit Court sends its process beyond the limits of the county in which the suit is brought, its jurisdiction must be shown by express averments in the declaration.

A person may be sued in any county where he may "be found," and be compelled to appear and answer, notwithstanding he may reside in a different county from that in which the suit is brought.

A summons was issued by the Circuit Court of one county against two defendants, and was duly served on one of them in that county. A second summons was sent to another county to be served on the other defendant, where it was served accordingly. The declaration filed in the case contained no averment as to the place where the cause of action accrued, or of the residence of any of the parties: *Held,* that the Court had no jurisdiction over the defendant who resided out of the county.

When a case has once been decided upon its merits in the Supreme Court, and shall, at a subsequent time, be brought before the same tribunal, the Court will not go behind its former adjudications, even though it shall appear upon the record that the Court acted without jurisdiction.

COVENANT, in the St. Clair Circuit Court, brought by the defendants in error against the plaintiffs in error. The cause

was heard at the May term 1846, the Hon. Gustavus P. Koerner presiding, when a judgment was rendered for the plaintiffs below for $1975, damages.

A history of the case will be found in the Opinion of the Court.

*J. Gillespie, W. Martin,* and *M. Brayman,* for the plaintiffs in error, relied upon the following points and authorities for a reversal of the judgment of the Circuit Court:

The record shows that the suit was commenced in St. Clair county; that service was had on Semple in that county, and on Cairns, his co-defendant, in Monroe county. It does not show that the plaintiffs resided there; nor that the cause of action there arose; nor that the contract was specifically made payable there; nor that either of the defendants resided there. Consequently, there was no such compliance with the statute as would give the Circuit Court of St. Clair County jurisdiction over the persons of the defendants. Rev. Stat. 413, § 2; *Bellingall* v. *Gear,* 3 Scam. 576, and cases there cited; *Swiggart* v. *Harber,* 4 do. 371.

When a want of jurisdiction appears, no plea is necessary, but a demurrer or writ of error may be resorted to. *Grant* v. *Tams,* 7 Monroe, 222; *McCormick* v. *Sullivant,* 6 Peters' Cond. R. 73–4.

Objection to the jurisdiction is not waived by an appearance and a motion to set aside the steps taken. *Brown* v. *McKeis' Rep's,* 1 J. J. Marsh. 475.

As to the jurisdiction of the Circuit Courts, see *Clark* v. *Harkness,* 1 Scam. 56; *Key* v. *Collins,* Ib. 403; *Clark* v. *Clark,* 1 Gilm. 34. These authorities go to show that the facts, which confer jurisdiction, must affirmatively appear.

*L. Trumbull,* for the defendants in error.

The only question now before the Court is, as to the jurisdiction of the Circuit Court of St. Clair county over the persons of the defendants in the said Court. Two writs issued from the Circuit Court of St. Clair county, one to the sheriff of that county, and one to the sheriff of Monroe

county.   One of the defendants was duly served with process in St. Clair, and the other in Monroe county.

The declaration contains no averment as to the residence of any of the parties.   Judgment was entered by default, but was afterwards arrested by the Circuit Court, and the Supreme Court, at its December term 1845, (2 Gilm. 455,) at the instance of the plaintiff in said cause, reversed the decision of the Circuit Court arresting judgment, and remanded the cause for further proceedings.

The Circuit Court subsequently entered up judgment against the defendants, who now prosecute this writ of error, and insist for the first time, that the judgment should be reversed for the reason, that the Circuit Court had no jurisdiction over the persons of the defendants.

Two answers may be given to this assignment of error.

*First.* It is too late to raise the question of jurisdiction. That matter is already *res adjudicata* by the former decision of this cause, reversing the order arresting judgment and remanding the cause for further proceedings.

Would the Supreme Court be guilty of the absurdity of remanding a cause for further proceedings to a Court that had no power to proceed further?   Yet such is the consequence of determining at this time, that the Circuit Court had no jurisdiction.   The circumstance that a different party now brings the case before this Court, can make no difference.   A defendant is as much concluded by a judgment as a plaintiff, and a defendant cannot, by making himself plaintiff, litigate a second time matter that has once been decided between the same parties.   Parties are mutually bound by a judgment rendered in a case between them, and if a judgment was not conclusive upon a defendant, it clearly would not be upon a plaintiff.   1 Greenl. Ev. § 524, and authorities there cited.

If it be insisted that the question of jurisdiction was not presented to the consideration of the Court upon the former hearing, the answer is, that it matters not whether the point of jurisdiction was at that time urged before the Court or not.   It is sufficient if the question of jurisdiction might

have been raised, and if the Court, in deciding upon the merits of the case, virtually determined it. Could, then, the present plaintiffs, and then defendants in error, have raised this question upon the former hearing in this Court? The record shows no want of jurisdiction at this time that did not appear then. Had the defendants in error at that time have urged upon the Court, that the Circuit Court had not jurisdiction of the case, would this Court, believing said position to be correct, have reversed the judgment and remanded the cause for further proceedings? If not, then it was in the power of the present plaintiffs in error. to have raised this very point at that time, although they were then defendants in error. It needed no cross error on their part to bring it to the notice of the Court, but it would have been a sufficient ground for sustaining the judgment of the Circuit Court arresting judgment, if it had been shown in argument in answer to the error assigned, that the Circuit Court had not jurisdiction of the case.

The arrest of judgment by the Court below did the plaintiffs no harm, if that Court had not jurisdiction to enter judgment, and it is well settled, that "a party cannot assign for error a decision that does him no injury." 1 Scam. 342; 3 do. 486.

A defendant would have little to do in this Court indeed, if he could not, without assigning cross errors, which the rules will not permit, show that the error assigned by the plaintiff had no existence in fact, was waived or cured by other parts of the record, or was not in the least injurious to the party assigning it. Such a position would be absurd, and yet it follows, if the defendants upon the former hearing could not, without assigning a cross error, have been permitted to urge the very same reason for sustaining the judgment of the Circuit Court at that time, which they now offer for reversing its last decision.

The positions above assumed are not only sustained by reason and common sense, but they are abundantly supported by authority.

The case of *The Washington Bridge Company* v. *Stew-*

*art,* 3 Howard, 413, and that of *Skillem* v. *May,* 6 Cranch, 267, are believed to be directly in point. In the former of these cases, the Supreme Court of the United States say: "It does not follow * * * that the Supreme Court can or ought, on an appeal from a decree in the same cause which is final, examine into its jurisdiction upon the former occasion." "The case is not brought here in such a case for any such purpose. It was an exception of which advantage might have been taken, by motion on the first appeal. The appeal would then have been dismissed for want of jurisdiction. * * * But the exception not having then been made of the alleged want of jurisdiction, the cause was argued upon its merits, and the decree appealed from, was affirmed by this Court. To permit afterwards, upon an appeal from proceedings upon its mandate, a suggestion of the want of jurisdiction in this Court, would certainly be a novelty in the practice of a Court of Equity." The Court add: The case, however, "might have been dismissed upon the authority of a case in this Court, directly in point. *Skillem's Ex'rs.* v. *May's Ex'rs,* 6 Cranch, 267. And upon the footing that there is no mode pointed out by law, in which an erroneous judgment by this Court can be reviewed in this or any other Court. In Skillem's case, the question certified by the Court below to the Supreme Court was, whether the cause could be dismissed from the Circuit Court, for want of jurisdiction, after the cause had been removed to the Supreme Court, and the Supreme Court had acted upon, and remanded the cause to the Circuit Court for further proceedings. The Supreme Court said: It appearing that the merits of the cause had been finally decided in this Court, and that its mandate required only the execution of its decree, it is the opinion of this Court, that the Circuit Court is bound to carry that decree into execution, although the jurisdiction of that Court is not alleged in the pleadings. * * * When that cause was before this Court, though the judgment of the Court below on it would have been reversed upon motion, for the want of jurisdiction on the face of the record, the defect having escaped the notice of the Court and of coun-

sel, and the Court having acted upon its merits, it determined that its decree should be executed. The reason for its judgment no doubt was, that the motion to dismiss the case in the Court below, for the want of jurisdiction, after it had been before this Court by writ of error, and had been acted upon, would have been equivalent, had it been allowed, to a decision that the judgment of this Court might have been reversed, when the law points out no mode in which that can be done, either by this or any other Court." See also upon the same point; 7 Metc. 286; 5 Cranch, 314; 10 Wheaton, 431; 1 do. 304; 7 do. 58; 12 Peters, 492.

*Second.* Admitting, for argument's sake, that the question of jurisdiction could now be raised, it is insisted that the service of process upon one of the defendants, in the county where the suit was brought, was sufficient to give the Court jurisdiction, and authority to send process to another county for another defendant. The statute provides that, "when there is more than one defendant, the plaintiff commencing his action where either of them resides, may have a writ or writs issued, directed to any county or counties where the other defendants or either of them may be found." Rev. Stat. 413, § 2.

In this record there is nothing to show where either of the defendants resided. What, then, is the presumption? Surely that they resided where they were served with process. This is not only a legal, but a natural presumption, and more especially is this presumption to be raised in favor of a Court of general jurisdiction. That the Circuit Courts of this State are Courts of superior and general jurisdiction, has been repeatedly decided. *People* v. *Scates*, 3 Scam. 352; *Beaubien* v. *Brinckerhoff*, 2 do. 273; *Brewster* v. *Scarborough*, ib. 280. And the law is equally well settled, "that nothing shall be intended to be out of the jurisdiction of a superior Court, except what specially appears to be so." "Every presumption is to be made in favor of the jurisdiction of a Court of general jurisdiction." *Wells* v. *Mason*, 4 Scam. 88; *Beaubien* v. *Brinckerhoff*, 2 do. 273; *Peacock* v. *Bell*, 1 Saund. 74; *Foot* v. *Stephens*, 17 Wend. 483. In the last case,

the Supreme Court of New York say: "In Courts of gen-
eral jurisdiction, the jurisdiction is presumed till the con-
trary appear." * * * "The declaration fails to show a ter-
ritorial power. All the cases are against this objection, and
would fill a page of quotation. Shall it be said that the law
will not presume, until the record first asserts the fact in the
line of circumstances which gives jurisdiction? I answer
such a construction of the rule, again contradicts the lead-
ing case of *Peacock* v. *Bell*, and confounds all distinction
between Courts of general and limited jurisdiction. Even
as to the latter, its record asserting the fact, becomes *prima
facie* evidence. In such case then is no need of presump-
tion; there is direct proof. And does the rule mean to say
no more in respect to a Court of record? It seems to me
a solecism."

The case of Beaubien before referred, to is believed to be
directly applicable to the one now before the Court.

In that case, the Municipal Court of Chicago had jurisdic-
tion only in cases when the cause of action arose in the city
of Chicago, or when the parties resided in Chicago, or
county of Cook. "The declaration contained no averment
that the plaintiff and defendant, or that the defendant resi-
ded, at the time of the commencement of the suit, in the
city of Chicago," and it was insisted that the Court had not
jurisdiction, but this Court say: "The note may have been
executed in Chicago, which would have given jurisdiction.
The plaintiff and defendant may also have resided in Chica-
go, or the county of Cook. In one of those ways, the Muni-
cipal Court may rightly have had jurisdiction both of the
person and of the cause of action; and as it does not appear
from the declaration, but that some one of the facts existed
which would have given the Municipal Court jurisdiction,
this Court is bound to intend, that the Municipal Court had
jurisdiction both of the person and of the subject matter of
the action." Apply the principles laid down in Beaubien's
case, to the case now before the Court. It does not appear
from the record, that the defendant served with process in
St. Clair county, did not reside in said county, and the nat-

ural presumption would be, that he resided where he was found. Is this Court bound to intend that a party served with process in Cook county, resided in Cook county, unless the contrary appears, and not bound to make the same intendment as to a person served in St. Clair county? It is impossible to conceive of a case more directly applicable to the one now before the Court, in the principles involved in each as to jurisdiction, than that of Beaubien. Will this Court overturn the doctrine so strongly laid down in the above cases, and not only refuse to infer that the defendant resided in St. Clair, where he was served, but in the absence of any evidence, infer that he did not reside there, and that a Court of general jurisdiction acted without authority? This would be reversing the rule, and presuming against the jurisdiction of a superior Court, which this Court has solemnly decided it is bound not to do.

The case of *Gillett* v. *Stone*, 1 Scam. 539, is also believed to be in point. In that case the process issued to a foreign county, where all the defendants were served. The declaration contained an averment that the plaintiffs resided, and the cause of action arose in the county where the suit was brought, but it did not contain any averment as to the residence of the defendants. The language of the statute in a case where the cause of action accrues in the county of the plaintiffs, is, "that process may issue to the sheriff of the county where the defendant resides." If, in the case now before the Court, it be necessary to aver that the defendant served in St. Clair county, resided in St. Clair, or the Court will infer the contrary equally, would it be necessary to aver that the defendants resided in the foreign county to which process was sent in the case of Gillett? But this Court decided in that case, that the averment that the plaintiffs resided, and the cause of action arose in the county where the suit was brought, was sufficient to give the Court jurisdiction, although there was no allegation as to the residence of the defendants. It is not easy to perceive why it is necessary to allege the residence of the defendants, when part reside in the county where suit is brought, and not ne-

cessary to allege it where all the defendants reside out of the county. The statute, in the same section, uses the word, "resides," in reference to both cases, and unless this Court would give to the word different meanings, it cannot hold an allegation of residence necessary in the present case, without directly overturning the decision in the case of Gillett.

None of the cases referred to by the plaintiffs, as decided by this Court, are applicable. They were all cases where the process for all the defendants was sent out of the county where the suit was brought, and the defendants there served, the declaration containing no allegation to give the Court jurisdiction. Such is the case of *Key* v. *Collins*, 1 Scam. 413, and of all the other cases. In none of the cases were any of the defendants served with process in the county where suit was brought.

Thus far the question of jurisdiction has been presented as if it were admitted, that the true construction of the statute would not allow defendants to be sued in a case like the present, unless some of them had a permanent residence in the county where the suit was brought, and the Court has been called upon to sustain the jurisdiction in this case, upon the authority of the cases above cited, and upon the ground that the Court is bound to intend, if such "permanent" residence be necessary, that the defendants served in the county where suit was brought, did permanently reside there, in the absence of any evidence in the record that he did not so reside.

But there is still another ground upon which the jurisdiction must be sustained.

The statute does not require that some of the defendants should be permanent residents of the county where the suit is brought. The word "resides" may very properly be construed to mean, actually being or residing at the time, so that notice could be served upon the defendants. Our statute is almost a literal copy from a statute which has existed in Kentucky for many years, and such is the construction that the Courts of that State have put upon the word "resides." In the case of *Moore* v. *Smith*, 2 B. Monroe, 341, the Court, in putting a construction upon their statute,

say: "The legislative intent may be supposed to have been, that if suit should be brought where, according to law, it might be instituted, that is, in any county where any defend-- ant was actually living, or in other words residing at the moment, and could be served with notice, process might be issued against any other co-defendant to any other county where he might, in like manner, happen to be at the time; and this appears to us to be the only useful and consistent interpretation; otherwise, if two joint obligors domiciled in another State, should be sojourning in Kentucky for a season, each for example in a different county, both could not be sued, because no suit could be brought in the county in which either of them resided, interpreting *residence* as synonymous with *domicil.*"

In Arkansas, if one of the defendants resided in the county where the suit was instituted, that was sufficient to confer on the Court jurisdiction of the case. The party objecting to the jurisdiction, if he relies upon the fact that none of the defendants resided in the county, must make that fact appear by plea to the jurisdiction, and if he fail to do so he cannot afterwards avail himself of the objection. "The right of being sued in the county where some one of the defendants resides, when they reside in different counties, is a personal privilege of which the defendants may avail themselves by a proper plea to the jurisdiction of the Court;" but unless the party objecting to the jurisdiction shows the fact upon the record, that none of the defendants were residents of the county where the venue is laid, the Court cannot judicially know it, and "it is not usual, nor considered necessary to al- lege in the declaration, in what county each defendant resides." *Hughes* v. *Martin,* 1 Ark. 463.

So, in Massachusetts, the statute provides that transitory actions shall be sued within the county where either the plaintiff or defendant lives. The Courts of that State say: "This remedy was given to the defendant. He may conse- quently waive it; and he must be considered as waiving it unless he seek it by plea in abatement to the writ. For the exception is not to the jurisdiction of the Court of Common

Pleas, which has cognizance of all transitory actions above the value prescribed in the statute, but is to the writ as sued out and returned in a wrong county." *Cleveland* v. *Welsh,* 4 Mass. 591; 5 do. 96.

According to the above authorities from Arkansas and Massachusetts, the objection to jurisdiction, if available at any time, could only be taken advantage of by plea in abatement. But it is insisted upon the authority of the case of Moore above referred to, that had it been made to appear by plea that the defendant served in St. Clair, was only temporarily there, it would not have defeated the jurisdiction, for, as has been well said, if it be necessary that some of the defendants should be permanent residents of the county where suit is brought, before process can issue to an adjoining county for other defendants, several joint obligors who are residents of some other State could not be sued at all in Illinois, if they happened to be temporarily in this State in different counties, because it would be impossible to bring the suit in a county where either permanently resided. The legislature surely never intended such absurd consequences to flow from the law in question, nor does the language used require such a construction.

The Opinion of the Court was delivered by

PURPLE, J.* The defendants in error sued the plaintiffs in error in the Circuit Court of St. Clair county, in an action of covenant, claiming damages for the breaches of covenants in a deed made and executed by the said plaintiffs to the ancestor of the defendants.

The summons issued in the suit was served on Semple, in St. Clair county, on the 13th day of May, A. D. 1845. A summons was issued against Cairns to the sheriff of Monroe county, which was served on him on the 13th of September following, in said last mentioned county. Both

---

*THOMAS, J. having been of counsel in this case, did not sit at the hearing. The case was argued at the December term 1846, a re-hearing granted, and finally decided at this term.

summons were issued on the same day, May 13th, 1845. The declaration contains no averment as to the place where the cause of action accrued, or of the residence of any of the parties, plaintiffs or defendants.

At the October term 1845, a judgment by default was entered against the plaintiffs, and a jury called and sworn, who assessed damages against them to the amount of $2319.

On the 20th of October, 1845, Semple appeared and filed a motion in arrest of judgment, which the Court sustained, upon the ground that some of the counts in the declaration were defective, the jury having assessed damages generally upon all the counts. The cause was removed to the Supreme Court by the present defendants in error, where, at the December term 1845, the judgment of the Circuit Court was reversed, and the cause remanded for further proceedings.

At the May term, A. D. 1845, of the St. Clair Circuit Court, the defendants filed the transcript of the order and proceedings of the Supreme Court, and entered a motion for a judgment upon the verdict of the jury. Semple appeared and moved for a continuance of the cause to the next term, upon an affidavit filed by him, which being adjudged insufficient by the Court, the motion was overruled. The defendants then entered a *remittitur* of damages to the amount of $344, and the Court gave judgment against Semple and Cairns upon the verdict of the jury for $1975.

The only question arising upon the assignments of errors in this case which we feel called upon to notice is, whether the Circuit Court had jurisdiction over the persons of the plaintiffs in error.

The Act of January 29, 1827, (Rev. Laws 1833, p. 145,) provides, "that hereafter it shall not be lawful for any plaintiff to sue a defendant out of the county where the latter resides or may be found, except in cases where the debt, contract or cause of action accrued in the county of the plaintiff, or where the contract may have specifically been made payable, when it shall be lawful to sue in such county,

and process may issue against the defendant to the sheriff of the county where he resides; provided, that where there are several defendants living in different counties, the plaintiff may sue either in the county where the cause of action arose, or in any county where one or more of said defendants may reside, and shall have the like process against such as reside out of the county where the action shall be brought as above." This suit is sought to be maintained under the proviso above recited.

This statute authorizes the Circuit Court to send its process to a foreign county in three cases: 1st. Where the contract or cause of action accrued in the county of the plaintiff; 2d. When suit is brought in a county where the contract is specifically made payable; 3d. Where there are several defendants who reside in different counties.

This Court has frequently been called upon to decide questions pertaining to the exercise of jurisdiction on the part of the Circuit Courts under the provisions of this law. In the case of *Clark* v. *Harkness*, 1 Scam. 56, a suit was commenced in Adams and the process issued to Morgan county: *Held*, that there should have been a special averment in the declaration of one of the causes enumerated in the Act to give the Court jurisdiction.

In *Key* v. *Collins*, 1 Scam. 403, it was also decided, that where process had issued from the county of Morgan to the county of Pike, the Circuit Court had no jurisdiction, the declaration containing no averment that the plaintiff resided in Morgan, or that the cause of action accrued in that county, and that under the first clause or provision of the statute, the cause of action must accrue, and the plaintiff reside in the county where the suit is commenced.

The same docrine is re-affirmed in the cases of *Shepherd* v. *Ogden*, 2 Scam. 259; *Wakefield* v. *Goudy*, 3 do. 133; *Brown* v. *Bodwell*, 4 do. 302, and *Clark* v. *Clark*, 1 Gilm. 33. None of these cases referred to precisely meet the question now under consideration. It must be admitted, however, that they settle beyond controversy, this principle: That wherever and whenever a Circuit Court sends its pro-

cess beyond the limits of the county in which the suit is brought, its jurisdiction must be shown by express averments in the declaration. It is admitted that any defendant may be sued in any county where he may "be found;" and this is all that is determined by the cases of *Beaubien* v. *Brincker-hoff*, 2 Scam. 270, and *Brewster* v. *Scarborough*, Ib. 280. The doctrine is, that when such defendant comes within the territorial jurisdiction of a Court, process may issue against him, and he be compelled to appear and answer, notwith-standing he may reside in a different county from that in which the suit is brought. I apprehend that this is a principle of the Common Law, which has been adopted by statute in this State, and in no way altered or supplied by any legisla-tive action.

In this case, Semple, at the time process was served on him, was found in the county of St. Clair. The Circuit Court of that county had jurisdiction over his person. But does it follow, that, because a Court has obtained jurisdic-tion over the person of one of several joint obligors, that such jurisdiction necessarily extends to others, who reside beyond the territorial limits of the county in which the suit is pending? What does the law require to authorize the Court to send its process against Cairns to the county of Monroe, where he resides? Clearly it must be, that the residence of Semple is in the county of St. Clair. In what manner is this fact to be shown?

It is contended, that for this purpose, the return of the sheriff upon the writ is sufficient evidence. We cannot as-sent to such a doctrine. It is directly opposed to all the former decisions of this Court, which determine, without ex-ception, that where ex-territorial jurisdiction is assumed, it must be claimed by positive averments in the declaration.

By the proviso of the statute under which this suit is brought, the same might have been commenced where the cause of action arose, or in a county where either of the covenantors resided. Had it been commenced in the coun-ty where the cause of action arose, can there be a reasonable pretence, under the decisions of this Court, for contending

that the facts conferring jurisdiction need not have been specially alleged in the declaration?

The return of the officer only proves, that he served the process at the time, in the manner, and at the place mentioned in his return.    This is all he is authorized or required by law to do.    It proves that the party who is served with process was in his county at the time of service, and there is no principle of law, which makes the return of such officer evidence of the domicil of a defendant.    It is the opinion of the Court, that there is nothing in this record showing that the Circuit Court had jurisdiction over the person of the plaintiff Cairns.

It was insisted on the argument, that the Courts in Kentucky, under statutes similar to ours, have held a different doctrine.    A statute of that State, passed in 1796, reads as follows: "When two or more persons are bound jointly and severally in any bond or writing obligatory, and the persons so bound shall reside in different counties, it shall be lawful for the clerk of the Court, where the suit is brought against one of the obligors, to issue a *capias ad respondendum* against the other obligor, or obligors directed to the sheriff of the county where they may reside;" and also by a subsequent Act, passed in 1812, it is provided that, "in every species of personal actions where there is more than one defendant, the plaintiff, commencing his action in the county where either of them resides, may issue any writ or writs to any county where the defendants, or any of them may be found."

In the case of *Moore* v. *Smith,* the Supreme Court of Kentucky decided, that the description of persons mentioned in these Acts, might be sued in any county in the State, where either of them might be found; and that when process had been served on one, the others might be brought in from foreign counties, even though some of them were non-residents of the State; that the Acts were both in force, and not inconsistent with each other; and, that the right to sue was not confined to the domicil of one of the obligors; that the word "reside," as used in these Acts, might properly be con-

strued to mean wherever the defendants might happen to be at the time of service. This part of the decision was unnecessary, and would hardly bear criticism. We apprehend that there is a plain and manifest distinction between the statutes of Kentucky and this State.

By the Kentucky Act of 1796, if the obligors in a bond or writing obligatory, reside in different counties, it is made lawful for the clerk of the Court, where the suit is brought against one of the obligors, to issue process against the others to the county where they may reside. By this provision, the jurisdiction of the Court to send its process to a foreign county does not depend upon the residence of the obligor first sued, but it arises from the fact of the institution of a suit against him at any place where he may happen to be found. Again, by the subsequent Act of 1812, the jurisdiction of the Court, when the action is commenced in the county where either of the defendants resides, is extended to any county where the said defendants, or either of them, may be found. The Court, in the decision before referred to, construed these Acts together, considered them both in force, and the Common Law jurisdiction of the Court over all parties who might come within its usual territorial jurisdiction, still existing, and in no wise affected or altered by the statutes; and placed considerable stress upon a usage and practice which had long prevailed, and been considered settled and established in the State. The case and the one at bar are not parallel. But if they were, although the former is entitled to respect, we should not feel justified in departing from the spirit of the adjudications which have been made by our own Courts, so repeatedly, that they ought to be considered as settled law.

A point has been made by the counsel for the defendants here, and not without much plausibility, that the judgment in this case cannot now be reversed for want of jurisdiction in the Court below, for the reason that the cause having been once before in this Court, brought here by the present defendants in error, passed upon by this Court, and the judgment of the Circuit Court reversed, that it is now too late

to raise the question of the jurisdiction of the Circuit Court. This question is not clear of doubt, and for this reason I have carefully examined the authorities, and considered them in connection with the established rules and practice of this Court. The substance of the decisions seems to be, that when a case has been once decided on its merits, and the same cause shall, at a subsequent time, be brought before the same tribunal, the Court will not go behind its former adjudications, even though it shall appear upon the record that the Court acted without jurisdiction; that a superior Court cannot review or reverse its own decisions solemnly made. 5 Cranch, 314; 6 do. 267; 10 Wheat. 431, 432; 1 do. 304; 7 do. 58; 12 Peters, 492; 7 Metc. 286.

I have looked into all these cases. Those contained in the U. S. Reports are principally, and I believe all, cases in which the same party had a second time removed the cause from the Circuit to the Supreme Court of the United States, after the same had been heard in both Courts upon the merits, and remanded for further proceedings; and in which, such party sought to assign errors upon the record, which had occurred prior to the first adjudication in the Supreme Court. That of *Booth* v. *The Commonwealth,* 7 Metc. 286, was a second writ of error brought by the plaintiff. To the first, there had been a plea of *in nullo est erratum.* Shaw, Chief Justice, said: "On such a plea, any error apparent on the record may be assigned, and the entire validity and legal correctness of the judgment are open, and of course decided. Upon the principle of *res judicata,* the plaintiff in error is now estopped from denying that the supposed error, now insisted on, was not considered and adjudged against him by the affirmance of the judgment." "New errors may be assigned *viva voce* at the hearing, taking care that the adverse party is not surprised; and that has been frequently done; and if the judgment be erroneous, in the particulars thus indicated, though not in the particulars assigned for error, the judgment will be reversed." In this Court the defendant in error is not permitted to assign errors, and the constant rule of practice has been, to notice no errors or irregularities in the record or

proceedings, which have not specially been set down and assigned for error. Consequently, the presumption that the question now before the Court is *res adjudicata*, is not raised. In this Court it will be presumed, when a party sues out a writ of error and brings his case here for adjudication, and the same is determined upon the merits and errors assigned, that he has no further objection to urge against the record, and that if errors exist, which are not so assigned, that they are waived. The parties are mutually entitled to this right— no more. In this case, it is the opinion of the Court that Cairns, at least, has done nothing which can be considered as amounting to a waiver of his privilege.

The judgment of the Circuit Court is reversed with costs.

TREAT, J. dissented.

*Judgment reversed.*