# MAMMOTH MINING COMPANY *v.* GRAND CENTRAL MINING COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF UTAH AND THE DISTRICT COURT OF JUAB COUNTY, STATE OF UTAH.

No. 97.   Argued January 28, 1909.—Decided March 8, 1909.

In reviewing the judgment of a state court under § 709, Rev. Stat., findings of fact resting on a false definition of a right existing under a Federal statute cannot be assumed to be correct and may be reconsidered; but the evidence will not be discussed here, and this court considers only whether there has been a mistake of law.

Where the trial court merely called in an advisory jury and in the highest court of the State on appeal the evidence was discussed and the findings reëstablished, reversal by this court can only be based on errors, if any, in opinion of the highest court.

Where the state court has found on the facts based on the evidence that the vein of plaintiff in error did not extend under the claim of defendant in error, an expression of opinion that there is a difference between a lode sufficient to validate a location under § 2322, Rev. Stat., and an apex giving extralateral rights (not decided by this court, *Lawson v. United States Mining Co.*, 207 U. S. 1) is not necessary to the result, and does not deny a Federal right and this court has not jurisdiction to review the judgment under § 709, Rev. Stat.

Writ of error to review 29 Utah, 490, dismissed.

THE facts are stated in the opinion.

*Mr. Charles J. Hughes, Junior,* with whom *Mr. R. N. Baskin, Mr. Everard Bierer, Junior, Mr. Aldis B. Browne* and *Mr. Alexander Britton* were on the brief, for plaintiff in error.

*Mr. William H. Dickson,* with whom *Mr. Henry P. Henderson* was on the brief, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This suit was begun by the Grand Central Mining Company

to recover for the removal of ores from beneath the surface of its Silveropolis mining claim, and for an injunction. The defendant, the Mammoth Mining Company, filed a counter claim, setting up that it was the owner of certain mining claims, especially the First Northern Extension of the Mammoth Mining Claim, Lot No. 38, being senior to all the other claims concerned; the Bradley, and the Golden King; the last two being to the west of the Mammoth Extension, between it and the Silveropolis, with more or less overlapping; and that the vein or lode from which the ore in question was taken has a part of its apex in the Mammoth Extension for 1,100 feet; which, if true, would entitle the Mammoth Company to the ore. It prayed that the plaintiff's claim be adjudged invalid, both because of the foregoing alleged facts and on the ground that the plaintiff's patent gave it no right to the ore unless the apex of the lode was within its claim, and it prayed also that the Mammoth Company's title be quieted and confirmed. After a trial the counter claim of the Mammoth Company was rejected; the judgment of the trial court was affirmed by the Supreme Court of Utah in an elaborate decision, and then the case was brought here, on the counter claim alone.

Both of the parties are Utah corporations, and the suit was in a state court. The ground on which this court is asked to take jurisdiction is that the decision of the Supreme Court on the facts rested on a definition of a lode or vein which the plaintiff in error contests, and therefore turned on the construction of Rev. Stats., § 2322. There is a faint argument on the other point that we have mentioned, that the defendant in error had no right to ore beneath the surface of the Silveropolis claim, unless from a vein having its apex there, but that, if relevant, has been disposed of by previous decisions of this court and may be disregarded. *St. Louis Mining & Milling Co.* v. *Montana Mining Co.*, 194 U. S. 235. So also may an attempt to reopen the findings of fact. Of course, if these findings rest on a false definition they may have to be reconsidered, and cannot be assumed to be correct. But the evidence will not be discussed here. The only

question with which we shall deal is whether the plaintiff in
error makes out the alleged mistake of law. *Chrisman* v. *Miller*,
197 U. S. 313, 319; *Egan* v. *Hart*, 165 U. S. 188, 18G.

The record discloses that the Mammoth Company in its cross
complaint set up the proposition as the limits of the title under
the Silveropolis claim that we have dismissed, and that it al-
leged that it set up a title under the laws of the United States.
The record also shows that at the trial the judge called in an
advisory jury, and that he gave them certain instructions as to
what constitutes the apex of a vein, &c.; and it is argued that
it must be assumed that the judge, when he made his findings of
fact adverse to the Mammoth Company was governed by the
same views of the law. But the cross complaint by itself shows
no warrant for this writ of error, and as the case went to the
Supreme Court by appeal, and the facts were discussed at great
length and reëstablished by that court, it is in the opinion of
that court alone, if anywhere, that the supposed error must be
found. Indeed the instructions to the jury were treated as im-
material by that court, and held not to be a ground for reversal,
even if wrong, if the judgment was right upon the evidence. It
is necessary, therefore, to show the nature of the case and of the
course of reasoning followed by the Supreme Court of the State.

For the character of the country where the question arises we
quote from the judgment under review:

" The mines are found in a lime belt which covers about two
square miles, and is the great producing area of the Tintic dis-
trict. In some places the limestone beds are upturned, large
areas tilted upon edge, the beds dipping nearly vertically down;
while in other places they dip at lower angles, and in special
areas the dips are quite uniform; and again, though, it seems,
not frequently, anticlinals exist. This limestone is surrounded
on all sides, except the north, by igneous rocks. The sedimen-
tary rocks are broken up and fractured, evidently the result of
igneous intrusion. The limestone carries some iron, the differ-
ent forms of iron oxide, also some manganese, and in places the
limestone is crushed, crumbled, and brecciated. . . . . The

surface of the limestone area, wherever exposed, is marked with innumerable seams, cracks, and small fissures filled with carbonate of lime, stained more or less with iron, and sometimes manganese. Quartz, spar, and other materials, characteristic, in general, of mineral-bearing limestone areas, are present, and in places the surface is brecciated and recemented. A trace of mineral, and of one or more of the precious metals, and, in places, more than a trace, even where there is no known vein, seems also to be a characteristic of that lime belt."

In the belt thus described the Mammoth Company's Lot 38 runs northeasterly, and the Silveropolis claim about north, its southerly boundary being considerably further north than the southern boundary of Lot 38. It is admitted that the apex of a vein extends northerly in Lot 38 from its southern boundary for six hundred and ninety feet to a point ninety feet south of the southern boundary of the Silveropolis claim extended. But the Utah courts found that at that point the vein on its strike and at its apex wholly departs from Lot 38, in a northwesterly and then in a more northerly direction, whereas the Mammoth Company contends that it continues in that lot to a line 1,100 feet distant from its southerly line, and that large deposits of ore, taken by the court to represent the strike of the vein, really are upon its dip.

In coming to its conclusion the Supreme Court, after stating the presumption that the ore belongs to the owner of the claim under which it is found, lays great stress on the fact that the Mammoth Company could not locate the hanging or foot wall of the supposed vein north of the point at which the vein was found to leave Lot 38. It goes on to find that by the preponderance of evidence the surface indications for a long distance east and west of Lot 38, north of the point indicated above, are the same as those in the lot. It reaches the same result from assays of numerous samples, taken from the open cuts and exposures in the same part of the lot. It then elaborately discusses the workings underground. It says that the fact is clear that the ore always is found near the line of the great ore bodies,

whether they be on the strike or on the dip of the vein, north-westerly beyond the above-mentioned point. It points out that the boundaries of a vein north of that point, and apex in Lot 38, and a strike and dip that would carry the vein to and include the disputed ore bodies, have been left in doubt, at least, notwithstanding great efforts by drifts, cross-cuts, raises and winzes, to prove that the vein exists. This doubt is explained by the witnesses for the Grand Central Company and by the court, on the ground that the vein was formed by replacement or metasomatic action within narrowly limited areas, and that the boundaries of the vein are the limits of the ore. Underground as at the surface, excepting those from the vicinity of the back fissure and the ore channel, the assays show no mineralization not common generally through that limestone region. Underground as at the surface, the Mammoth Company cannot locate the hangings and the foot walls of the vein.

The court observes that a vein cannot be said to exist merely because rock is crushed, shattered, or even fissured, and that what will constitute one must depend somewhat upon the nature of the country in which it is alleged to be found. It fully recognizes that a true vein may be barren in places, but concludes that to allow the Mammoth Company's claim would amount practically to declaring the whole limestone area to be one vein, thousands of feet wide. After calling attention to the admitted fact that the vein has well-defined boundaries and strike from the south end of Lot 38 for about seven hundred feet, it finds that the same conditions continue to exist from there on in a northwesterly direction outside the limits of the lot, and that the ore bodies found outside those limits are on the strike and not upon the dip. It calls attention to the almost vertical dip of the vein at specified places, and is of opinion from that and other facts discussed in detail that no dip is shown that could carry a vein from Lot 38 to the ore bodies in dispute. It finds its conclusions confirmed by the conduct of the Mammoth Company during all the years of operation in its mine, making a strong argument that it is not necessary to recite.

The counsel for the Mammoth Company contends that the Supreme Court of Utah based its judgment upon assays and a definition that fails to recognize that a vein may be a vein, although it is in soft rock, like limestone, where the walls of the fissures have been eaten into by the mineralizing solutions, and although the surface water has leached the valuable mineral constituents from the upper portion down into the vein. But the abridged statement that we have made of the material part of its reasoning shows that assays played but a small part, and that definitions played no important one in leading to the conclusion. On the contrary, most if not all of the findings that we have stated deal with pure matters of fact. So far as definitions go, the court adopted those that were quoted in *Iron Silver Mining Company* v. *Cheesman,* 116 U. S. 529. It is true that it expressed the opinion that there is a difference between a lode sufficient to validate a location and an apex giving extralateral rights. But without intimating agreement or disagreement with this view, *Lawson* v. *United States Mining Co.,* 207 U. S. 1, it is enough for us to say that it was not necessary to the result. The court was against the Mammoth Company on the facts, it did not accept its theory of leaching, &c., but was of opinion that the ore deposits were made within originally narrow boundaries by the mineral solutions rising through the main fissure from the deep.

We deem it unnecessary to discuss the opinion below at greater length, as we think it entirely plain, upon a study of the lengthy and careful discussion, that it presents no question that we can be asked to review. The plaintiff in error makes an elaborate argument upon the evidence that the Supreme Court was wrong in its findings of fact. We repeat that upon the writ of error we shall not go into such matters. It is enough to say that upon the facts as found neither the record nor the opinion presents a Federal question, and that therefore the writs of error must be dismissed.

*Writs of error dismissed.*