GRAND CENTRAL MINING COMPANY v. MAMMOTH MINING COMPANY.

No. 1957.   Decided September 3, 1909 (104 Pac. 573).

1. APPEAL AND ERROR—SUBSEQUENT APPEALS—LAW OF THE CASE. The rule that a decision on an appeal, however erroneous, becomes the law of the case on a subsequent appeal includes the question of the appellate court's jurisdiction, so that, in assuming jurisdiction of an appeal and deciding the case on the merits, the Supreme Court necessarily decided that the judgment appealed from was final and appealable, and the question cannot be raised on a subsequent appeal. (Page 375.)

2. COURTS—WRIT OF ERROR FROM UNITED STATES SUPREME COURT TO STATE COURT—STAY OF PROCEEDINGS. As a rule, no action can be taken by the state court as to any part of a case which has been removed by writ of error to the Supreme Court of the United States. (Page 376.)

3. COURTS—WRIT OF ERROR FROM UNITED STATES SUPREME COURT TO STATE COURT—STAY OF PROCEEDINGS. Where, in an action in which defendant set up a counterclaim, an appeal was taken from the judgment dismissing the counterclaim before the issues raised by the complaint were determined, a writ of error from the federal to the state Supreme Court, upon the latter's affirmance of the judgment appealed from, only removed the proceedings involving the judgment on the counterclaim to the federal court, so that the pendency of the writ of error would not stay proceedings in the trial court to determine the issues

raised by the original complaint, especially where its action was not stayed by a supersedeas bond or otherwise. (Page 377.)

4. APPEAL AND ERROR—SUBSEQUENT APPEAL—LAW OF THE CASE. Where the Supreme Court, on a prior appeal from a judgment dismissing a counterclaim, decided that the judgment was final and appealable by assuming jurisdiction of the appeal, it also necessarily decided that the case was divisible, and that the judgment dismissing the counterclaim was independent of the case made by the original complaint. (Page 377.)

5. BOUNDARIES—CONFLICTING ELEMENTS—FIELD NOTES AND MONUMENTS. The courses and distances in the field notes and in the patent of a mining claim were not conclusive of the true location of the established monuments of the official survey. (Page 379.)

6. BOUNDARIES—EVIDENCE—SUFFICIENCY. Evidence *held* to sustain a finding as to the correct location of a corner of a mining claim as fixed by a survey. (Page 379.)

APPEAL from District Court, Fifth District; *Hon. Joshua Greenwood*, Judge.

Action by the Grand Central Mining Company against the Mammoth Mining Company.

Judgment for plaintiff and dismissing defendant's counterclaim. Defendant appeals.

AFFIRMED.

See 29 Utah 490, for former appeal.

*Everard Bierer* for appellant.

*Dickson, Ellis, Ellis & Schulder* for respondent.

APPELLANT'S POINTS.

Appellant insists that the so-called decree was an order merely. If it was a final judgment, we have now two final judgments in this case without the intervention of a new trial—an impossibility—a conclusion similar to the *reductio ad absurdum* of mathematics. If this court decides that

it was, in legal effect, but an order, it cannot escape the conclusion and holding that it was therefore not appealable, and that its own decision or judgment of October 10, 1905, was without jurisdiction, and therefore was and is null and void. (Comp. Laws Utah, secs. 3183, 3323; 16 Cyc. 471; 23 Cyc. 672; Spelling on New Trial and Appellate Procedure, secs. 481, 646, 647; Elliott Appellate Procedure, secs. 77, 80, 81, 83, 85, 90, 91; *North Point Con. Irr. Co. v. Utah & Salt Lake Canal Co.,* 14 Utah 155; *Eastman v. Gurrey,* 14 Utah 169; *Watson v. Mayberry,* 15 Utah 265; *Bear River Co. v. Hanley,* 15 Utah 506; *Standard Steam Laundry v. Dole*; *Golden v. Jennings,* 1 Utah 135; *Benson v. Anderson,* 9 Utah 154; 11 Cyc. 702; 2 Cyc. 536; Brown on Jurisdiction, secs. 3, 10, 26c; *Rogers v. Cady,* 104 Cal. 288; *Davison v. Munsey,* 27 Utah 87; *Anderson v. Halthusel Merc. Co.,* 30 Utah 31; *Myers v. East Bench Irr. Co.,* 31 Utah 89.)

Parol evidence is incompetent to substitute in a conveyance a call for another monument in the place of the call for the original monument there contained. If the monuments are lost or removed and their original locations are not established by competent proof, the courses and distances prevail, and control the description. (*Resurrection Gold. Min. Co. v. Fortune G. M. Co.,* 129 Fed. 668; 17 Cyc. 567-570; 17 Cyc. 615, 616, 619.)

RESPONDENT'S POINTS.

The judgment or decree of March 14, 1902, was final. It was determinative of the entire controversy between the parties. It settled every controverted issue raised by the pleadings. There was, when the decree was entered, nothing remaining to be done which called for the exercise of judicial discretion. (1 Black on Judgments, sec. 41; Spelling on New Trial and Appellate Procedure, pp. 32, 33; Elliott's Appellate Procedure, secs. 85, 90; *Stahl v. Stahl,* 220 Ill. 188; *Jones v. Wilson,* 54 Ala. 50; *Lewis v. Campau,* 14 Mich. 458; *Barry v. Briggs,* 22 Mich. 201; *Klever*

*v. Seawell,* 65 Fed. 373; *Striven v. North,* 134 Fed. 366; *Davey v. Davey,* 52 Ark. 221; *Forgay v. Conrad,* 6 How. 200; *Clutton v. Clutton,* 106 Mich. 690; *Dodsworth v. Hopple,* 33 Ohio St. 16; *Massie v. Stredford,* 17 Ohio St. 596; *Taylor v. Leith,* 26 Ohio St. 436; *Lehman v. Ford,* 47 Ala. 733.)

But if it were conceded that the decree rendered by Judge Marioneaux, on the 14th day of March, 1902, was not a final decree, such as would authorize an appeal therefrom, still this court would be powerless to reverse the decision which it rendered on the former appeal, or to change or modify that decision in any particular whatever. The former decision is binding in all subsequent proceedings in the same cause, not only upon the parties and the trial court, but upon this court as well. (*Sibbald v. United States,* 12 Peters 488; *Roberts v. Cooper,* 20 How. [U. S.] 467; *Hollowbush v. McConnell,* 12 Ill. 203; 2 Spelling on New Trial and Appellate Practice, sec. 691; *Noonan v. Bradley,* 12 Wall. 121; *Clark v. Lyon County,* 8 Nev. 181; *Fowler v. Bishop,* 32 Conn. 199; *Champaign County v. Reed,* 106 Ill. 389; *West v. Douglas,* 145 Ill. 111; *Green v. Springfield,* 130 Ill. 515; *Stacy v. Vermont Central Railroad Co.,* 32 Vt. 552; *Lee v. Stahl,* 13 Colo. 174; *Stewart v. Preston,* 80 Va. 623; *Reclamation District No. 3 v. Goldman,* 65 Cal. 635.)

Questions which were open to dispute and which were either expressly, or by necessary implication, decided on the first appeal of a cause (though not adverted to in the opinion), are not open to review on a second appeal. (*McKinney v. State,* 117 Ind. 26; *Joslin v. Cowee,* 56 N. Y. 626; *Williams v. Rogers,* 14 Bush. 776; *Stewart & Palmer v. Heiskell's Trustee,* 86 Va. 191; *Camden v. Werninger,* 7 W. Va. 528; *Adams v. Fisher,* 75 Tex. 657; *Parker v. Pomeroy,* 2 Wis. 84; *Willis v. Smith,* 72 Texas 565; *Pittsburg C. & St. L. Railroad Co. v. Hickson,* 110 Ind. 225; *B. C. R. & N. Ry. Co. v. Dey,* 89 Iowa 13; *Tipton County v. Ind. P. & C. Ry. Co.,* 89 Ind. 101; *Bradford v. Patterson,* 1 A. K. Marsh, 346; *Harlem v.*

*Reed,* 70 Ill. 479; *City of Montgomery v. Gilmore et al.,* 33 Ala. 116; *Central Railroad Co. v. Coggin,* 73 Ga. 689; *Leese v. Clark,* 20 Cal. 388; *Phelan v. San Francisco,* 20 Cal. 40; *Haynes v. Meeks,* 20 Cal. 288; *Davidson v. Dallas,* 15 Cal. 75; *Polack v. McGrath,* 38 Cal. 666; *Porter v. Doe,* 10 Ark. 187; *McLunden v. McGlaun,* 60 Ga. 244; *Ogden v. Larrabee,* 70 Ill. 510; *Lillie v. Trentam,* 130 Ind. 16; *Ryan v. Martin,* 18 Wis. 703; *Wilkes v. Davis,* 23 Lawyers' Rep. Ann., p. 103 *et seq.; Stacy v. Vermont Central Railroad Co.,* 32 Vt. 551; *Drew v. Horton,* 27 Wis. 300; *Thompson et al. v. Abbott,* 15 Md. 268, 284; *Davenport v. Kleinschmidt,* 8 Mont. 467; *Clary v. Hoagland,* 6 Cal. 685; *Washington Bridge Co. v. Stewart,* 3 How. 420; *Hungerford v. Cushing et al.,* 8 Wis. 324; *State of Wisconsin v. Waupaca County Bank,* 20 Wis. 672; *Cable v. United States Ins. Co.,* 111 Fed. 19; *Williams v. Bruffy,* 102 U. S. 248; *Skillern's Executors v. May's Executors,* 6 Cranch. 266; *Gans v. Caldwell,* 148 U. S. 228; *Fowler v. Bishop,* 32 Conn. 199.)

STRAUP, C. J.

This action was brought by the Grand Central Mining Company, the plaintiff and respondent, against the Mammoth Mining Company, the defendant and appellant. In the first count of the complaint it was alleged that the plaintiff was the owner of a certain vein or lode beneath the surface limits of a lode claim owned by the plaintiff, and called the Silveropolis, and that the defendant had trespassed thereon, and had wrongfully extracted ores therefrom and converted them to its own use. In another count the plaintiff prayed for injunctive relief. The defendant denied the alleged trespass and the wrongful extraction and conversion of the ores, and by way of counterclaim alleged that it was the owner of a mining claim called the "First Northerly Extension of the Mammoth Mining Claim known as U. S. Lot No. 38," and that a vein on its apex and on its course crossed the southerly end line of lot 38,

and thence continued northerly in such lot to a point 1100 feet north of the southerly end line of the lot; that the apex of such vein was very broad, and in its width extended easterly beyond lot 38, and overlapped certain other mining claims belonging to the defendant, and that it also extended beyond the west side line of such lot, and overlapped portions of other mining claims owned by the defendant called the "Jenkins," "Golden King," and "Bradley," and that a portion of the apex of such vein was found in such last-named claim; that lot 38 was the senior location, and that a portion of the apex of such vein was found therein extending northerly a distance of 1100 feet from the south end line of lot 38, and that, within the two parallel lines extended easterly and westerly, one through the southerly end line of lot 38, and the other through a point in such lot 1100 feet northerly therefrom, the vein and lode, upon its dip, passed underneath the surface limits of the Jenkins, the Golden King, and the Bradley, and thence, still westerly, passed beneath the surface limits of the Silveropolis and the Consort mining claims belonging to the plaintiff, and embraced all ore bodies found within the Silveropolis and the Consort claims south of the 1100-foot line.

Upon the allegations of the counterclaim the defendant prayed that the plaintiff's claim to the portion of the lode within and underneath the surface limits of both the Silveropolis and the Consort claims, and south of the 1100-foot line and north of the southerly end line of lot 38, extended westerly in their own direction, be adjudged invalid, and that the defendant's title and possession to the vein and lode, as in the counterclaim described, including the portion thereof alleged to be underneath the surface limits of the Silveropolis and the Consort claims, be quieted against the alleged adverse claim of the plaintiff, and prayed judgment for the value of the ores extracted and removed therefrom by the plaintiff, and for injunctive relief. The plaintiff denied the allegations of the counterclaim in respect

of the defendant's ownership of the ores, veins, and lodes within the boundaries of the Silveropolis and Consort claims, and alleged title thereto, and ownership thereof, in itself. The issues raised by the counterclaim were first tried to the court and an advisory jury. Upon special findings submitted to the jury they found that the apex of the vein, conceded by both parties to exist in the south end of lot 38, on its course or strike wholly departed from such lot, in a westerly direction, at a point 690 feet north of the southerly end line of lot 38, and south of the southerly end line of the Silveropolis extended easterly in its own direction to and across lot 38; that no part of the apex of any vein or lode, north of such point of departure, existed within the limits of lot 38, and that no part of the apex of any vein or lode existed within the limits of lot 38 north of the southerly end line of the Silveropolis extended easterly in its own directions to and across lots 38, and south of the 1100-foot line; and that the ore bodies lying within and underneath the surface limits of the Silveropolis and the Consort mining claims, south of the 1100-foot line extended in its own direction, did not belong to the defendant, and were not a part of any vein, lode, or ledge having its apex, or any part of its apex, in lot 38, nor were they connected with any vein or lode on its dip having its apex, or any part of its apex, within lot 38.

Upon receiving the verdict of the jury the court expressed an opinion to the effect that it agreed with the findings of the jury that the apex of the vein within the limits of lot 38 wholly departed the westerly side line of such lot, at the place found by the jury, but further expressed the opinion that, in its judgment, the apex of the vein on its course or strike did not extend as far in a westerly direction as contended for by the plaintiff, but extended more northerly, and, while wholly outside the limits of lot 38, still within the limits of the Golden King and Bradley claims, and expressed the view that the ore bodies lying underneath the surface limits of the Silveropolis and the Consort claims south of the 1100-foot line belonged to and

were connected with the dip of a vein which had its apex in the Golden King and Bradley. The defendant thereupon asked leave to amend the counterclaim, alleging the apex of the vein in the Golden King and Bradley claims, so as to conform with the views expressed by the court. The court, being of the opinion that the amendment proposed presented a new cause of action, denied the request to so amend. The court thereupon approved and confirmed the findings of the jury, and made findings of fact accordingly, upon which conclusions of law were made, and a judgment entered dismissing the counterclaim and denying the relief prayed for therein. Such judgment was entered on the 14th day of March, 1902. Before the issues raised by the complaint, and relating to the alleged trespass and the wrongful extraction and conversion by the defendant of the ores within the boundaries of the Silveropolis, were tried or determined, the defendant prosecuted an appeal to this court from the judgment so rendered and entered dismissing the counterclaim. On that appeal the principal assignments of error related to the questions of insufficiency of the evidence to support the findings, and of the rulings of the court in instructing the jury and in denying the defendant's request to amend the counterclaim. We then had before us all the evidence which had been adduced in the cause, and a record of all the proceedings had dismissing the counterclaim. The case on appeal was argued and submitted on the merits, and the judgment of the court below was thereafter affirmed by this court, on the merits, on the 11th day of October, 1905. The opinion is found in 29 Utah 490, 83 Pac. 648, where the questions and matters then before this court more fully appear.

After the remittitur had been sent to the court below, the defendant prosecuted a review of the judgment of affirmance rendered by this court to the Supreme Court of the United States on a writ of error, upon the alleged ground that the construction of the Federal law was involved. In obedience to the writ a copy of the record of the case and of the proceedings in this court was transmitted to the Su-

preme Court of the United States. Pending such proceedings the plaintiff caused the case on the issues raised by the complaint, and relating to the alleged trespass and extraction and conversion of the ores by the defendant from the Silveropolis, to be brought on for trial and determination in the district court. The defendant objected to the court's proceeding to a trial of such issues, on the ground that the case had been removed to, and was pending in, the Supreme Court of the United States on writ of error, and that the district court for that reason was without jurisdiction to so proceed. The defendant's objection was overruled. The case proceeded to trial on such issues before the court, without a jury, who found that the plaintiff was the owner and in possession of the Silveropolis claim, and that beneath the surface limits thereof there was a lode of rock in place bearing gold, silver, copper, lead, and other metals, and that the plaintiff was the owner in possession, and entitled to the possession of such lode of rock, and the ores therein contained; that the defendant wrongfully extracted ore from such lode or rock in place, to the value of $91,349, and converted the proceeds thereof to its own use; that the plaintiff was entitled to judgment in such sum, together with the interest thereon, amounting in the aggregate to $151,030.34, for which amount judgment was entered in favor of the plaintiff, and against the defendant on the 11th day of November, 1907. A motion for a new trial was made and denied on the 3d day of March, 1908. On the 4th day of June, 1908, the defendant appealed from that judgment to this court. On the 31st day of August, 1908, the defendant served and filed an amended notice of appeal appealing from such judgment, and also from "that certain order or so-called judgment or decree made and entered" on the 14th day of March, 1902, dismissing the defendant's counterclaim. Pending the present appeal in this court, the Supreme Court of the United States, on the 8th day of March, 1909, dismissed the writ of error upon the ground that neither the record nor the former opinion of this court presented a Federal question.

(*Mammoth Mining Company v. Grand Central Mining Company*, 213 U. S. 72, 29 Sup. Ct. 413, 53 L. Ed.)

The appellant, in settling the bill of exceptions, caused all of the evidence adduced and all the proceedings had with respect to the counterclaim and the judgment of dismissal entered in March, 1902, and which were before this court on the former appeal, together with all the evidence adduced and all the proceedings had subsequent to the remittitur of this court, and relating to the issues raised by the complaint, to be embraced and settled in the bill, and it now presents a transcript and abstract of all such proceedings for review.

In the assignment of errors appellant has again raised the questions which were presented, submitted, and decided upon the former appeal, and especially those relating to the insufficiency of evidence to support the findings and judgment rendered in March, 1902, and the rulings relating to the instructions of the court, and its refusal to permit appellant's amendment to the counterclaim. The other errors assigned relate to proceedings of the trial court subsequent to the mandate of this court on the former appeal. We are asked to again review the questions presented, reviewed, and decided on the merits on the prior appeal, on the alleged ground that the judgment, rendered in March, 1902, dismissing the counterclaim, and from which the appellant had prosecuted the prior appeal, was not a final judgment; and, since the statute permits an appeal only from a final judgment, we were without jurisdiction to entertain the first appeal, and for that reason the judgment of affirmance rendered by this court was a nullity. When the first appeal was prosecuted to this court by the appellant, it regarded and treated the judgment so appealed from as final, at least for all purposes of the appeal. No question was then raised nor suggested by any one that the judgment was not final and appealable, or that we, for any reason, were without jurisdiction to entertain the appeal and to review and decide the questions so presented on the merits. A decision on the merits having been rendered ad-

versely to appellant on a review of such judgment, it now disclaims the jurisdiction and power of the court which it had itself sought and invoked. We do not say that appellant is for that reason, or upon equitable principles, estopped to deny the authority of the court in such particular, but we do say, because of the action taken by us on the former appeal, in assuming jurisdiction and reviewing the judgment appealed from, and in deciding the questions of law presented on the merits, we necessarily held and adjudicated that the judgment so appealed from was final and appealable. Such an adjudication became the law of the case, from which neither we nor the litigants can depart on a second appeal, or on any subsequent proceedings had in the case. The rule is well settled, and it is not disputed by the appellant, that when a case has been once taken to a higher court, and its judgment obtained upon the points of law involved, such judgment, however erroneous, becomes the law of the case and cannot on a second appeal be altered or changed. The appellant, conceding such to be the rule, nevertheless asserts that it applies only to questions of law arising in the case when the court had jurisdiction, and that the rule does not extend to questions of the court's own jurisdiction. Courts have heretofore well answered such a contention.

In *Clary v. Hoagland,* 6 Cal. 685, the court said:

"The first point decided by any court, although it may not be in terms, is that the court has jurisdiction; otherwise it would not proceed to determine the rights of the parties. For the purposes of the first trial in this court the jurisdiction was as much determined as though the point had been made and passed upon. Certain it is that, unless made, it cannot now be questioned."

In *Cable v. United States Life Ins. Co.,* 111 Fed. 19, 49 C. C. A. 216, the court also said:

"It was suggested that in view of the decision of the Supreme Court in *Farmers' Loan & Trust Co. v. Lake St. El. R. Co.,* 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667, we should reconsider our former judgment in this case, and dismiss the bill for want of jurisdiction. We are unable to see that the decision referred to is

in conflict, but whether so or not the previous judgment of this court is *res judicata* between these parties, and we are without authority to disturb it."

In *Semple v. Anderson,* 9 Ill. 546, it was said:

"The substance of the decisions seems to be that, when a case has been once decided on its merits, and the same cause shall, at a subsequent time, be brought before the same tribunal, the court will not go behind its former adjudications, even though it shall appear upon the record that the court acted without jurisdiction."

Again, in the case of *Washington Bridge Co. v. Stewart,* 3 How. 424, 11 L. Ed. 658, it was said by the court:

"The Supreme Court certainly has only appellate jurisdiction, where the judgment or decree of the inferior court is final. But it does not follow, when it renders a decree, upon an interlocutory and not a final decree, that it can, or ought, on an appeal from a decree in the same cause, which is final, examine into its jurisdiction upon the former occasion. The cause is not brought here in such a case for any such purpose. It was an exception, of which advantage might have been taken by motion on the first appeal. The appeal would then have been dismissed for the want of jurisdiction, and the cause would have been sent back to the circuit court for further proceedings. But the exception not having then been made of the alleged want of jurisdiction, the cause was argued upon its merits, and the decree appealed from was affirmed by this court. . . . Having passed upon the merits of the decree, this court has now nothing before it but the proceedings subsequent to its mandate. . . . Its decree became a matter of record in the highest court in which the case could be finally tried. To permit afterwards, upon an appeal from proceedings upon its mandate, a suggestion of the want of jurisdiction in this court upon the first appeal, as a sufficient cause for re-examining the judgment then given, would certainly be a novelty in the practice of a court of equity."

The argument of counsel for appellant, 'that under the Constitution and the statute of this state an appeal lies only from a final judgment, and that the former judgment appealed from was not final, might be of considerable force when considered and applied to an original question; but the difficulty is it was in effect adjudicated

on the prior appeal that the judgment appealed from, in view of the Constitution and the statute, was final and appealable. Right or wrong, that holding has become the law of the case, and is binding alike upon us and the litigants in all subsequent proceedings in the same case. For this reason we decline to re-examine or again review any question or point of law which was reviewed and decided on the former appeal on the same record.

It is also contended that the district court, subsequent to the former mandate of this court, was without jurisdiction to proceed with the trial and determination of the issues raised by the complaint, and relating to the alleged trespass and the wrongful extraction and conversion of the ores taken from the Silveropolis, on the ground that the case was then pending in the Supreme Court of the United States on a writ of error. The writ of error to review the prior judgment of this court was first directed to the clerk of this court. The remittitur having theretofore been sent to the district court, a second writ was issued directed to the clerk of the district court. The record of the case which was in this court, and upon which the judgment of the court below was affirmed by us, was transmitted to the Supreme Court in obedience to the writ. Section 1007 of the Revised Statutes of the United States provides that in any case where a writ of error may be a supersedeas, the security required shall be given within sixty days after the rendition of the judgment if a stay of process on the judgment is desired. No supersedeas bond was given, nor was the writ applied for within sixty days after the rendition of the judgment of affirmance in this court. We recognize the general principle urged by appellant that a case cannot be pending in two courts at the same time, and that, as a general rule, no order can be made, and no action taken, by the state court in a case, or any portion thereof, which has been removed on a writ of error to the Supreme Court of the United States.

The pertinent question to be determined, however, is, what was removed? The answer to that must be: The

case which was in this court whose judgment was sought to be reviewed on the writ. The issues involved in the counterclaim, and the proceedings had in respect thereof, resulting in the judgment of dismissal, constituted all the proceedings of the case brought to this court. Such proceedings constituted the whole case produced before us, the case which was reviewed and in which a judgment of affirmance was rendered by us. The writ of error to review the judgment so rendered by this court removed the whole of such case, and nothing more. There was nothing more to be removed. If there was a portion of the case in the district court pending on untried and undetermined issues, and which was not brought here, and hence not involved in the case on appeal, the case so prosecuted on the appeal, reviewed, and adjudicated by us was wholly independent thereof and separate therefrom. And the writ of error to review the judgment rendered by us carried to the Supreme Court of the United States the case which we had, not some other case. Of course it is now persistently asserted by appellant that the case as a whole was indivisible, and "is and was a unit," and that the judgment rendered dismissing the counterclaim, and from which the appellant had prosecuted the first appeal, was not final and not appealable. But when we, in the prior appeal, adjudged the judgment final and appealable, a ruling from which neither we nor the litigants can now depart, we also necessarily adjudged the case to be divisible, and that the judgment dismissing the counterclaim and the proceedings had in respect thereof were independent of, and separate from, the issues raised by the complaint. To hold otherwise is to hold that the judgment so appealed from was not final. If such prior adjudication leads to the conclusion of two final judgments in the same case, as is urged by the appellant, such conclusion can no more now be avoided than can the adjudication itself from which the conclusion follows. The difficulty is the appellant does not now propose to be bound by the former adjudication, and stoutly maintains that we shall likewise not

be bound by it. It, therefore, insists, since we, as it now asserts, wrongfully assumed on the prior appeal a jurisdiction invoked by it, and erroneously held the judgment final which it itself treated as final, that we shall now commit more error by ignoring the well-established and settled principle of the law of the case, and correct the first alleged error which appellant, by its entire course and conduct, asked us to commit. So far, however, as concerns the immediate question under consideration, it does not matter so much whether the prior judgment appealed from be now regarded as an intermediate or a final judgment, for it was the affirmance of such judgment by this court, and the records and the proceedings of the case upon which it was rendered, that was sought to be reviewed in the Supreme Court of the United States. No matter by what name it may now be designated, there was no other judgment to be reviewed and no other records to be transmitted. The case reviewed by us embracing only the issues and the proceedings involved in the counterclaim, and which were necessarily adjudged by us to be independent of, and separate from, the then untried and undetermined issues raised by the complaint, we do not see wherein the district court was without jurisdiction to proceed as was done, especially since its action was not arrested nor stayed by a supersedeas bond or otherwise.

The further point urged is that in the trial of the issues raised by the complaint the court erred in its findings as to the correct location of the southwest corner of the Silveropolis claim. It is claimed by the appellant that there is no evidence to support the finding of the court, in such particular, and that the courses and distances in the field notes of the official survey for patent, and the description in the patent from the United States, show such corner to be at a point other and different from that found by the court. The difference, as claimed by the appellant, involves a strip of ground along the southerly end of the claim about fourteen feet wide at one end, nine feet at the other, and one hundred and thirty feet long, and a narrow strip a few

feet in width at the southerly end, and running northerly to a point along the west side line of the claim. The courses and distances in the field notes, and in the patent, were not conclusive of the question of the true location of the established monuments of the official survey. One of the original locators of the claim testified on behalf of respondent that he was on the ground and fixed the corner stakes when the claim was located; that he assisted in the survey for the amended location, and was present and assisted in the official survey for patent, and assisted in locating and placing the corner stakes of the claim; that he was frequently upon the ground for many years thereafter, and observed and saw that the posts and monuments so fixed and placed had not been removed nor disturbed; and that they and the southwest corner of the claim, as found by the court, were at the same points on the ground as were established and fixed when the official survey for patent was made. There is no dispute as to the correct location of the other corners of the claim. The Consort claim adjoins the Silveropolis on the west. The south end line of the Silveropolis extended is the same as the south end line of the Consort. The southeast corner of the Consort, the correct location of which is not in dispute, is identical with the southwest corner of the Silveropolis as found by the court. It was not shown that there was a post or monument at the point or place called for in the field notes, nor that there was a post or monument marking the southwest corner of the Silveropolis other than or different from the one testified to by the witness on behalf of the respondent and as found by the court. The testimony of such witness is also corroborated by other testimony in the record in at least some of the salient points. We think the evidence sufficient to support the finding of the court.

We are of the opinion that the judgment of the court below ought to be, and it therefore is, affirmed, with costs.

FRICK and McCARTY, JJ., concur.