## MAMMOTH MINING CO. v. GRAND CENT. MINING CO. et al.[*]

(Circuit Court of Appeals, Eighth Circuit. May 24, 1926.)

No. 7091.

**Mines and minerals ⬅=⇒38(18).**

Evidence *held* to justify trial court in determining boundary between mining claims by running line from established corner by courses and distances, and to sustain boundary so established.

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Suit by the Mammoth Mining Company against the Grand Central Mining Company and others. Decree for defendants, and plaintiff appeals. Affirmed.

Charles C. Dey, of Salt Lake City, Utah (Frank A. Johnson, Robert E. Mark, and A. L. Hoppaugh, all of Salt Lake City, Utah, on the brief), for appellant.

John Jensen, of Salt Lake City, Utah (John A. Marshall, B. S. Crow, A. M. Cheney, L. R. Martineau, Jr., and H. M. Stephens, all of Salt Lake City, Utah, on the brief), for appellees.

Before LEWIS, Circuit Judge, and MUNGER and FARIS, District Judges.

LEWIS, Circuit Judge. Appellant has been the owner for many years of four lode mining claims in the Tintic Mining District, State of Utah. They are known as the First Northern Extension of the Mammoth, the Jenkins, the Golden King and the Bradley. Appellee owns two claims in that district, the Silveropolis and the Consort. Some of these claims overlap, some are contiguous

and others adjacent. This rough plat shows the two with which we are immediately concerned:

The Bradley is an older location than the Consort, and the triangular piece in conflict was conveyed by patent to appellant. That made a segment of the westerly side line of the Bradley (between A and B) the common boundary line between the two, and the issue here is as to the true location of that line, which in large part is determined by ascertaining the point at which original corner post 5 of the Bradley stood. The patent survey of that claim was made in August, 1887, and patent issued in December, 1893. The patent description begins at corner 1, at a post four inches square marked U. S. 158 P 1, for Post No. 1, in a mound of stones, thence by courses and distances to the other corners in their numerical order, calling for a post at each corner, thus: "To post No. 2, —to post No. 3,—to post No. 4,—to post No. 5,—to post No. 6." Where the boundaries of other mining claims are intersected, the point of intersection was tied to a corner of the intersected claim. This description was taken from the field notes of the patent survey, introduced in evidence, which also tied each corner, except corner 2, to one or more natural or artificial monuments. In those notes corner 6 of the Bradley is described as a pine tree eight inches in diameter blazed and marked U. S. 158 P 6, for post No. 6; and corner post 2 is reported as being set alongside post 4 of the Jenkins claim. Each

corner post is described as being four inches by four inches by four feet long in ground and mound of stone, and so marked as to designate each particular corner. It is said by some of the witnesses that this survey was not carefully made.

On February 11, 1897, appellant sent Mr. Burton, a mining engineer, on the ground to survey the Bradley, which he completed during that and the following year. He was in appellant's employ. He found posts 3, 4 and 5 standing apparently in the positions in which they were originally placed. He surveyed southerly from post 2 which he found lying down and set it up, and reset a post at corner 1, finding no post there to mark that corner. He ascertained the location of corner 6 by starting at post 5, as he then found it, and ran a line following the patent survey, south 44 deg. 54 min. west 249.9 ft. and set a sawed pine post 4 inches square in a mound of earth and stone, and described it as post 6 of the Bradley. He found no post there but he found a cedar tree near there blazed and marked 6-158. He did not have a copy of the field notes with him. He had a plat of the Bradley with courses and distances and did not take the tree as representing corner 6. That tree has been so obliterated that the proof as to where it stood leaves the fact in serious doubt and uncertainty. Furthermore, appellants counsel reject the suggestion that a cedar tree stood at the southwest corner of the Bradley. They say it was a pine tree, but it also could not be found. Mr. Burton further testified that post 5 as he found it in 1897 and post 6 as he set it during that survey have both been moved from the position in which they then were, that he first learned that fact on March 4, 1911, that post 5 had been moved southwesterly 23 feet from its old position and post 6 about 25 feet in the same direction from the post which he set at that corner. He said when he first saw the marked cedar tree he supposed it was a bearing tree, that if he had had with him at that time the Bradley field notes he would have taken the tree as post 6 of the Bradley. In 1899 and 1900 he and Mr. Brooks, a mining engineer, made a joint survey of the Bradley and other claims, he at that time representing appellant and Mr. Brooks appellee. That was done because of litigation between these parties then pending in the State court. A map which he delivered to appellant as the result of that survey fixed corner post 6 of the Bradley as he had theretofore reset it. Post 4 of the Jenkins claim and post 2 of the Bradley were a

common corner, according to the Bradley field notes, but post 4 of the Jenkins was found by Mr. Brooks on May 27, 1892, to be standing 13 feet from post 2 of the Bradley. Post 4 of the Jenkins was tied to a bearing tree and that post as re-established put it at a point 13 feet away from post 2 of the Bradley. Taking the course and distance from post 4 of the Bradley to post 5 of that claim as given in the field notes and patent, Mr. Burton testified that corner 5 would be found at a point south 41 deg. 15 min. east 25 feet from the present position of post 5, and continuing on the course and distance called for in the field notes from post 5 to post 6, post 6 would be south 39 deg. 15 min. east 25 feet from the present position of post 6.

Mr. Brooks testified that he first saw post 4 of the Jenkins, which by the Bradley field notes was a common corner with post 2 of the Bradley, on April 19, 1892. The two posts were standing alongside. He next saw them on May 27th following, when post 2 of the Bradley was in the same position in which he saw it in the preceding month, but post 4 of the Jenkins was 13 feet away from post 2. At a later date he found post 2 of the Bradley in a different position. He said that post 5 of the Bradley, the last time he saw it, was standing 22.4 feet southwest from the the position in which he found it in January, 1900. In that year he found post 6 where it had been reset by Burton, and it has been changed from that position to its present position. He and Burton both testified that post 4 of the Jenkins was the only post of that claim to be found in 1892. They had with them the field notes of survey of that claim.

Mr. McDonald, a mining engineer, made a partial survey of the Bradley in December, 1900, at the request of the attorney for appellant. He assumed corner 4 of the Jenkins for corner 2 of the Bradley for a starting point. He ran to corner 1, found no post and set one, thence to corner 6, on the courses and distances called for in the patent. When he got to corner 6 he did not find a post there. He put a post there four by four to designate that corner. He then ran to corner 5 and found no post there and put one up four by four and a half inches.

Mr. Samuel McIntyre, a large stockholder in appellant company and for awhile in charge of its affairs, testified that he first learned there was confusion and uncertainty about the lines of the Bradley at the time Mr. Burton sent his map over, that Burton had post 2 of the Bradley within the side lines of the First Northern Extension of the Mammoth, where as the field notes put it on the west side line of that claim. His company then sent Mr. McDonald to make a survey and map, and when he got McDonald's map he discovered that he had made the same mistake Burton had made. Until he received those maps he did not know there was any confusion or uncertainty as to the positions of posts 2, 5 and 6 of the Bradley. He thought Burton and McDonald had each put them too far east. At that time he was getting ready for a trial of the case in the State court between these same litigants and saw McDonald's map very shortly before the trial. Appellant then employed Mr. Knight as its mining engineer.

Mr. Donnelly, who had been in the employ of appellee as its foreman and superintendent, but was not so employed at the time he testified nor for two years theretofore, stated that he knew where original post 5 of the Bradley stood. There was a pile of rock around it, that while the case in the State court was on trial he saw Mr. Knight in company with two other gentlemen on the property. It was on Sunday. They placed a new post to the west, 20 to 30 feet from where he had seen post 5 of the Bradley standing. They also put a new post 15 to 25 feet to the southwest from where post 6 of the Bradley was then standing. He also saw them put a new post about 25 to 30 feet north of post 5 of the Silveropolis claim, which had always stood there. He went down by corner 6 of the Bradley that day and observed there had been a fire on the side of the cedar tree and the numbers were burned off. This occurred in December, 1900, or the early part of the year 1901, when the first trial was on in the State court case.

Several other witnesses testified, some for appellant and some for appellee. Some of them based their testimony on observations made many years before. They stated their familiarity with the locality and the different claims, that they had frequently seen some of the posts at different corners of different claims, particularly post 5 of the Bradley, and gave their recollection as to the point upon the ground where it and some of the other posts stood; thus placing corner 5 at the spot contended for by appellant, which is farther west than found by the court. The engineer who surveyed the Bradley for patent did not testify, but appellant offered other mining engineers to sustain its contention.

The foregoing statement of a part of the testimony is not made with the intention of

accepting it as the uncontradicted facts in the case, but for the purpose of showing the great uncertainty as to where the posts originally stood which marked the four southerly corners of the Bradley; and we think that uncertainty was not overcome or shaken by the testimony of the other witnesses.

It was stipulated that posts 3 and 4 of the Bradley had remained standing in the original positions in which they were placed. The district judge was of the opinion that there was so much conflict and uncertainty as to the true location of all other corners of the Bradley, and ties of those corners to natural objects and the corners of other claims, that the only reliable and safe way, or the most reliable and safe way to locate corners 5 and 6 was to follow the original survey from established corner 4 by courses and distances, to-wit: Commencing at Post 4 of the Bradley and running thence south 18 deg. 55 min. west 1,257.02 feet for corner 5, thence south 44 deg. 54 min. west 249.92 feet for corner 6, and decreed said line to be the westerly boundary line of the Bradley claim.

Appellant contends that other facts in the case afford a more reliable basis for the ascertainment of the original position of post 5 of the Bradley than that adopted by the court. That post had two ties or bearing points. One was "a pine stump 14 inches in diameter and 8 feet high, south 19 deg. 50 min. west 95 feet distant" (there was serious doubt in the records in the Surveyor General's Office whether this distance should not be 9.5 feet), but it is conceded that no such bearing tree could be found of late years. The other tie of post 5 as found in the field notes is this: "Post No. 5 of Silveropolis Lode Lot 135 bears S. 38 deg. 36 min. E. 263.4 ft. distant." The field notes of the Bradley also recite, "all the above distances to bearing points are by actual measurements." There is no proof in the record as to just where post 5 of the Silveropolis stood upon the ground when this tie was made. There is evidence, referred to above, that a new post 5 of the Silveropolis was set early in December, 1900, or January, 1901, northerly about 25 to 30 feet from the position which the old post 5 then occupied; but it is argued that inasmuch as the parties to this controversy litigated to final determination in the State court the issue of the true location of corner 5 of the Silveropolis (Grand Cent. Min. Co. v. Mammoth Min.

Co., 36 Utah, 364, 104 P. 573, Ann. Cas. 1912A, 254) that finding and decree, as to the location of that corner, should be controlling in the present inquiry, and the point so ascertained and fixed taken as the point to which the tie was made. If this contention should be accepted and post 5 of the Bradley located by following its tie to corner 5 of the Silveropolis, as the latter was established by the State court's finding and decree, then post 5 of the Bradley would be at a point slightly southwesterly from where it was fixed by the court, and very much farther southeasterly from the point contended for by appellant as true corner 5 of the Bradley. It is thus in conflict with course and distance from established and agreed post 4 of the Bradley and is not in agreement with the contention of appellant as to the original and true location of Bradley post 5. But post 6 of the Bradley is also tied in the Bradley survey to post 5 of the Silveropolis. If this tie were adopted to locate post 6 of the Bradley it would, on our estimate from the plats in evidence, put that post far to the east of a point contended for by either party and greatly deflect the line from post 5 to post 6 as given in the Bradley survey notes, thus radically changing the location of the southerly end of the Bradley and probably annulling the parallelism of its end lines. One of these ties is no more reliable than the other, hence the court rejected both of them as being unreliable for the purpose of establishing either corner. Appellant also offered evidence tending to show the relation of the position of original post 5 of the Bradley to a contact between yellow and blue limestone, and further, the relation of the side line of the Bradley to an old path cut through the timber from post 4 southerly; and it is argued that all of the facts should have been considered and weighed by the court in ascertaining the true location of post 5, but that the court threw them aside and adopted the method that has been stated. We are unable to see on what intelligent theory all of the facts insisted upon could have been harmonized and a fairly accurate conclusion and result reached therefrom. We think the method adopted was permissible under the applicable rules of law and was the most fair and practicable one that could have been adopted on the facts presented.

In our opinion there was no reversible error committed and the decree is affirmed.