## CHIEF CONSOL. MIN. CO. v. MAMMOTH MIN. CO. OF NEVADA et al.*

## MAMMOTH MIN. CO. OF UTAH v. CHIEF CONSOL. MIN. CO. et al.

Circuit Court of Appeals, Eighth Circuit.
November 24, 1928.

Nos. 8187, 8210.

John Jensen, of Salt Lake City, Utah (John A. Marshall, of Salt Lake City, Utah, B. S. Crow, of Los Angeles, Cal., A. M. Cheney, H. M. Stephens, and G. A. Marr, all of Salt Lake City, Utah, on the brief), for Chief Consol. Min. Co.

Mahlon E. Wilson, of Salt Lake City, Utah, for Mammoth Min. Co. of Nevada.

A. L. Hoppaugh, Robert E. Mark, Frank A. Johnson, and Charles C. Dey, all of Salt Lake City, Utah, for Mammoth Min. Co. of Utah.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and REEVES, District Judge.

VAN VALKENBURGH, Circuit Judge. The litigation of which the controversy now before us forms a part has been long continued and has involved several phases. The appellee Mammoth Mining Company of Nevada is the owner of four lode mining claims in the Tintic mining district of Utah known as the First Northern Extension of the Mammoth, the Jenkins, the Golden King, and the Bradley. Appellant Chief Consolidated Mining Company in the same district owns two claims, the Silveropolis and Consort. It acquired those claims by purchase from the Grand Central Mining Company, a Colorado corporation. May 9, 1902, the Mammoth Mining Company of Utah and the Grand Central Mining Company of Colorado each commenced suits against the other. The Grand Central Company charged the Mammoth Mining Company with asserting rights to the Silveropolis and Consort lode mining claims under a claim of apex and with trespass in the way of mining and extracting ores from beneath such claims.

*Rehearing denied March 11, 1929.

It sought an injunction against such trespasses and prayed for such other and further relief as might be proper. The Mammoth Mining Company in its suit sought to quiet its title to the same portion of the vein and ore body vertically beneath said Consort and Silveropolis mining claims by virtue of the claim that the apex of said vein was within the Jenkins, Golden King, and Bradley mining claims owned by it. It also sought an accounting for ore taken from said vein vertically beneath said Consort and Silveropolis mining claims by the Grand Central Mining Company. Issues being joined, the two suits were consolidated by order of court November 24, 1902. Trial was stayed until the determination of the action then pending in the Supreme Court of Utah, which involved the apex question. This action in the state court was begun on the 9th day of September, 1899. The trial court found in favor of the Grand Central Mining Company. On appeal to the Supreme Court of Utah, this decree was affirmed October 11, 1905. 29 Utah, 490, 83 P. 648. Writs of error to the Supreme Court of the United States were dismissed March 8, 1909. 213 U. S. 72, 29 S. Ct. 413, 53 L. Ed. 702. Meantime, in the District Court of the United States for the District of Utah, the consolidated case rested, with the exception that, on February 15, 1904, by amendment to its bill, the Mammoth Company tendered an issue as to the surface boundaries of the Bradley lode mining claim in relationship to the boundaries of the Consort. Until this boundary line was determined there could be no accounting between the parties for the alleged trespasses. On March 15, 1911, the District Court by its order directed an examiner to take and report testimony on this issue. The examiner reported July 20, 1911. Upon this report the issue was heard and considered by the court in 1914; but for some unexplained reason no judgment or decree was signed and entered; thereafter, no further action appears to have been taken until March, 1924, at which time the court undertook to clear its docket of cases thus long pending, and demanded that the case be tried or dismissed; thereupon, the boundary issue was reheard without objection on either side. August 2, 1924, a decree was entered defining the boundaries of the mining claims of the parties and quieting the title to certain property therein described in the Grand Central Mining Company against all claims of the Mammoth Mining Company. Upon appeal by the Mammoth Mining Company, this decree was affirmed May 24, 1926. (C. C. A.) 13 F.(2d) 26.

December 5, 1925, the Chief Consolidated Mining Company, appellant herein, was granted leave to file, and did file, two supplemental bills, by the first of which it was admitted as a substituted plaintiff by reason of its purchase from the Grand Central Mining Company of the claims in controversy, to which reference has been made. The date of this purchase was November 10, 1922. By the second bill it prayed an accounting for the gross value of the ore taken and extracted by the Mammoth Mining Company from vertically beneath the surface of the Consort mining claim both before and during the continuance of the pending litigation. Motions on the part of the Mammoth Mining Company to strike these supplemental bills were denied. This action was taken July 30, 1927; the progress of the case having been arrested until the decision of this court on appeal. Thereupon, the Mammoth Mining Company of Utah filed its answer to the supplemental bill of the Chief Consolidated Mining Company as substituted plaintiff, in which, among other things, it stated that on the 28th day of December, 1906, the Mammoth Mining Company of Utah, in the process of winding up its affairs, sold and conveyed to the Mammoth Mining Company, a corporation created and existing under the laws of the state of Nevada, all of its mining claims and real property, including said Bradley lode mining claim and all of its other mining claims and property then owned and possessed by it in the Tintic mining district, Jaub county, state of Utah, and all of its personal property of every kind and character; that thereupon the purchaser aforesaid took possession of all said property, real and personal, and thereafter, from and including January 1, 1907, mining operations were carried on and conducted by the Mammoth Mining Company, a corporation of the state of Nevada. In this answer, which was filed August 29, 1927, it was further stated: "That in the month of April 1910 the State of Utah duly forfeited and annulled the charter of the defendant, Mammoth Mining Company, for failure to pay the annual license tax for the year 1909. That no reinstatement of the charter of said corporation was made, and said revocation became final on the first day of July 1910."

On September 9, 1927, the Chief Consolidated Mining Company filed its motion for leave to file a supplemental bill making the Mammoth Mining Company of Nevada a party by name on the record in the consolidated cause, and that it have as against said Nevada Company the benefit of all pleadings, evidence, decrees, proceedings, and other mat-

ters theretofore filed, taken, entered, or had in the consolidated case. Upon hearing, this motion was denied January 21, 1928. It was further decreed in the same order "that the accounting in this cause be and the same is hereby limited and confined to the period of time during which the Mammoth Mining Company, a corporation of Utah, was the real party in interest, and will not be permitted to cover any period later than the 28th day of December, A. D. 1906." From this order and decree, generally, the Chief Consolidated Mining Company prosecutes this appeal, and the Mammoth Mining Company of Utah prosecutes its cross-appeal from that part of the decree awarding an accounting against it.

The Mammoth Mining Company of Nevada has interposed in this court a motion to dismiss upon three principal grounds: First, that the order or decree from which the appeal is attempted is not final, but interlocutory; second, that the action of the lower court in refusing to make the Nevada Company a party rested in that court's discretion and is not reviewable; third, that the appeal, even if authorized by law, was not taken in time. The latter contention is obviously without merit upon the record. The order or decree denying the motion to file supplemental bill was filed January 21, 1928. The appeal was taken April 3, 1928.

The first and second points may be considered together. The law on the subject is well stated in the opinion of Judge Woods, speaking for the Circuit Court of Appeals for the Fourth Circuit, in Rosemary Manufacturing Co. v. Halifax Cotton Mills, 266 F. 363, 364. He says:

"Granting or refusing leave to file a supplemental bill is usually in the discretion of the trial court, and not reversible on appeal, except for abuse of discretion. Mexican Central Railway Co. v. Pinkney, 149 U. S. 194, 13 S. Ct. 859, 37 L. Ed. 699; Berliner Gramophone Co. v. Seaman, 113 F. 750, 51 C. C. A. 440. The trial court will be considered to have abused its discretion when the appellate court is clear in its conviction that the action of the trial court was based on a material error of law, or will result in denial of a fair trial in a matter of consequence for which the moving party can have no adequate redress in another proceeding."

"A final order is one which determines a substantial right against a party in such a manner as leaves him no adequate relief except by appeal."

Odell v. Batterman Co. (C. C. A. 2) 223 F. 292; American Brake Shoe & Foundry Co. v. New York Rys. Co. (C. C. A. 2) 282 F. 523.

And this is true irrespective of final decree in the main litigation. Rector v. United States (C. C. A. 8) 20 F. (2d) 845; Standley et al. v. Roberts (C. C. A. 8) 59 F. 836; United States v. River Rouge Improvement Co., 269 U. S. 411, 46 S. Ct. 144, 70 L. Ed. 339; Sullivan v. Associated Billposters & Distributors, etc. (C. C. A. 2) 6 F.(2d) 1000, 42 A. L. R. 503; Mayer et al. v. White (C. C. A. 8) 12 F.(2d) 710; General Inv. Co. v. Lake Shore & M. S. Ry. Co. (C. C. A. 6) 250 F. 160.

As said by the Circuit Court of Appeals for the Second Circuit in General Electric Co. v. Alexander et al., 280 F. 852–856: "The procedure [of allowing a supplemental bill rather than to drive a plaintiff to file a new bill], though of modern growth, tends to economy and speed and is to be favored."

Viewed in the light of the foregoing rule, it is evident that the order denying the motion to make the Mammoth Mining Company of Nevada a party to the suit and confining the accounting to the period during which the Mammoth Company of Utah was the real party in interest, to wit, not later than December 28, 1906, deprived appellant of any substantial relief in this litigation against the Nevada company. The court, in its memorandum denying the motion, was of opinion that "the Mammoth Company of Nevada is bound by the decree heretofore made herein by this court, and affirmed by the Circuit Court of Appeals, and will be bound by any judgment hereafter to be given on the accounting without formally made a party on the face of the record." If so, we do not perceive why that company should not properly be made a party. This is a case in equity, which has been pending for more than a quarter of a century, and it is highly desirable, in accordance with equitable principles, that the controversy should be concluded in the present action. An accounting is incidental and ancillary to the quieting of title and the settlement of boundary in the Grand Central Mining Company and its successor, the Chief Consolidated Mining Company, under the prayer for general relief and the issue tendered by the Mammoth Mining Company. The trial judge does not make it clear in what form of proceeding he conceives that the Nevada company may be made to respond to the judgment on accounting without formally being made a party to the record. It would seem, however, that he would leave the relief to some remedy at law. He says: "Un-

der the facts, it seems to me, the court should not affirmatively exercise its power to improve the position which the Chief Consolidated Company acquired at the time it took over the property, suits and causes of action, of the Grand Central Company. This court should in my opinion relegate the Chief Consolidated Company to such remedy or remedies as the law gave it at that time."

 Beyond dispute, by its purchase, the Chief Consolidated Mining Company acquired all the rights of the Grand Central Company in the premises past, present, and future. It has been substituted as a party and is entitled to the benefit of whatever rights may have accrued to it. If compelled to bring actions at law for the recovery of ores unlawfully removed from its property, it would be met for the great part, if not all, of such recoveries by the bar of Statutes of Limitation. Moreover, such an accounting would belong more properly to equity, and still more properly to the present action. It seems clear that the case falls within the rule stated, and that the appellant has no adequate remedy except by this appeal.

From the record it appears conclusively that the Mammoth Mining Company of Utah, nowhere named in the original pleadings other than as "Mammoth Mining Company," in December, 1906, conveyed all of its property of every kind and character to the Nevada company. The date of organization of the Nevada company is not stated, but it is a matter of legitimate inference that it was organized for the express purpose of taking over all the assets of the Utah company. Shares of stock in the Nevada company, to the amount of $400,000 par value, were turned over to the Utah company, and by it distributed to its stockholders in the proportion of their holdings. The officers and stockholders of the two companies at the time were substantially identical. The transaction was evidently a reorganization whereby the Mammoth Mining Company of Nevada became the immediate successor of the Utah corporation of the same name. The latter went out of business—remaining in existence only for the purpose of winding up its affairs. In 1910 its charter was formally annulled. In substance, the new company was but a continuation of the old.

"Although where two corporations of the same name, chartered by different States, exist and there has been no merger, the corporations are separate legal persons, the court may, where the circumstances as in this case justify it, look beyond the formal and corporate differences and regard substantial rights rather than the mere matter of organization." Riverdale Cotton Mills v. Manufacturing Co., 198 U. S. 188, 25 S. Ct. 629, 49 L. Ed. 1008. And they may be treated as identical when the interests of justice require it. United States v. Milwaukee Refrigerator Transit Co. (C. C.) 142 F. 247; Bainum v. American Bridge Co. (C. C.) 141 F. 179.

Until 1911, long after the title of the Utah company had passed to the Nevada company, the consolidated case was vigorously prosecuted without change of name and without apparent change of interest. After 1911 both parties permitted the litigation to rest until March, 1924. At that time, either could have interposed the plea of laches with success; but apparently both were confident, or at least hopeful, of the ultimate outcome. Without objection they joined issue and prosecuted their respective claims to a final decision in this court. It was not until the Chief Consolidated Mining Company filed its supplemental bill praying an accounting that the Nevada company pleaded that it was a stranger to the suit. Throughout the litigation in the trial court, and in this court, the case proceeded by common consent as between parties in interest. In the District Court the president and general manager of the Nevada company verified the supplemental bill and amended answer filed December 30, 1924. Attorneys for the Nevada company represented the so-called Mammoth in both courts. In 1911 they stipulated "that the Mammoth Mining Company, in case No. 501, is now, and was at the time of the commencement of this suit, the owner of the Bradley mining claim and in possession of the same." In the same year, before the examiner, the president of both companies, at the time of the change in charter existence, gave the following testimony: "I have been an officer of the Mammoth Mining Company for a great many years. Prior to 1888 I was acting as the General Manager of that company. In 1888 I was elected as superintendent and remained in that position until about 1890. My duties as superintendent were looking after the affairs of the company and running the mine throughout, living there the greater part of the time. In 1890 I retired from the active management of the company. In 1899 I became president of the company again and from that time on I have had general charge of the Mammoth Mining Company."

In the appeal to this court the vice president of the Mammoth Mining Company of

Nevada, in the name of that company, with its corporate seal attached, executed the appeal bond. It is our judgment that by common understanding, by virtue of interest, and by overt acts on the part of officers and counsel, the Nevada company became and was, after it acquired the property of the Utah company, the real party in interest in this litigation, and as such should properly have been made a formal party to the record. It would appear that it conceived it had a substantial interest in the outcome of this litigation. Now that the decision has been adverse, it would be unconscionable to permit it to escape the concrete result by shifting the recovery to the defunct Utah company, all of whose property it has taken over and still enjoys.

That it has submitted itself to the jurisdiction of both courts by its conduct in the prosecution of this litigation is established by abundant authority. Whatever claim of laches it might once have asserted has been waived. 21 C. J. 257, par. 252; 4 C. J. 1333, par. 27; 2 R. C. L. 7.

It is urged that appellant had notice of the succession of the Nevada company to the Utah company, and therefore is estopped to demand the substitution of the Nevada company as party defendant. While appellant may be charged with constructive notice of the existence of the Mammoth Mining Company of Nevada, there is nothing in the record which could effect the issue before us.

The case on the main appeal is reversed and remanded, with directions that the supplemental bill of the Chief Consolidated Mining Company be allowed and that the Mammoth Mining Company of Nevada be made a formal, as it is now an actual, party to the record. The cross-appeal of the Mammoth Mining Company of Utah is reversed in so far as the decree below limits the accounting to December 28, 1906. The accounting prayed will proceed in accordance with the interests and obligations of the parties, as they may be disclosed, and with the views in this opinion expressed.

It is so ordered.