EAST COAST CEDAR CO. et al. v. PEOPLE'S BANK OF BUFFALO, N. Y., et al.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1901.)

No. 391.

1. APPEAL—FINAL DECREE—SUIT FOR PARTITION.

A decree in a suit for partition, in which the only question in controversy was whether the land should be partitioned in specie, or sold and the proceeds divided, which determines such issue, and orders a sale of the land, leaving the distribution of the proceeds as the only thing remaining to be done after such decree has been executed, is final, for the purposes of an appeal.[1]

2. PARTITION—DIRECTING SALE—IMPRACTICABILITY OF DIVISION.

A tract of land sought to be partitioned consisted of 128,000 acres, largely swamp, a large part of it practically worthless, and the remainder of very unequal value; the timber, which constituted its chief value, being in scattered tracts, and at greatly unequal distances from water courses by which it must be marketed. There were also over many portions of it adverse claims of various character, with uncertain boundaries. Held, that the trial court correctly decided that such tract could not be divided without injustice to some of the owners in common, of whom there were eight, owning unequal shares, and properly ordered it sold and the proceeds distributed, as the only just and practicable method of division.

---

[1] Finality of judgments and decrees for purpose of review, see notes to Trust Co. v. Madden, 17 C. C. A. 238; Prescott & A. Ry. Co. v. Atchison, T. & S. F. R. Co., 28 C. C. A. 482.

3. SAME—PARTIES—LIEN CREDITORS OF TENANT IN COMMON.

Creditors having liens on the interests of some of the tenants in common of a tract of land are not necessary parties to a suit for its partition. but where the land is sold they may intervene and assert their liens against the share of their debtors in the proceeds.

Appeal from the Circuit Court of the United States for the Eastern District of North Carolina.

F. H. Busbee and E. F. Aydlett, for appellants.

Morris Morey and James E. Shepherd, for appellees.

Before GOFF and SIMONTON, Circuit Judges, and WADDILL, District Judge.

SIMONTON, Circuit Judge. This case comes up on appeal from the circuit court of the United States for the Eastern district of North Carolina. The bill was filed by the East Coast Cedar Company against the People's Bank of Buffalo, N. Y., and several others, praying the partition of a large tract of land (about 167,000 acres) in Dare county, N. C., of which complainant claimed to be tenant in common with all the other defendants. The bill alleges that the complainant is the owner of an undivided one-fifteenth in the said lands, and that the defendants are owners of the remaining fourteen-fifteenths, and sets out in elaborate detail the percentages of ownership of each of the defendants and of the complainant, as follows:

| | |
|---|---|
| East Coast Cedar Company | .067 |
| American Exchange Bank | .28 |
| People's Bank of Buffalo | .13 |
| W. A. Ensign & Co | .168 |
| Receivers of the Bank of Commerce | .234 |
| Phœnix National Bank | .102 |
| M. H. Brown | .019 |
| | 1.000 |

The answers of M. H. Brown and of the Phœnix National Bank admit this statement of the interests of the several owners. The other defendants (the People's Bank of Buffalo, N. Y.; the American Exchange Bank of Buffalo, N. Y.; W. A. Ensign and Charles A. Ensign, trading as W. A. Ensign & Co.; Bank of Commerce in Buffalo, N. Y., by its receivers) in their joint answer deny that the complainant had any interest whatever in the lands, but subsequently, by an amended answer, withdraw the denial, and admit the ownership of complainant in an undivided one-fifteenth in these lands. So the percentages above stated are admitted.

The substantial issue made in the pleadings is whether in making the partition the respective shares of the parties be allotted to them in severalty, or whether the lands be sold as a whole, and the shares of each be thus set apart in the proceeds. This large tract of land is thus described in the bill:

"The said land consists very largely of swamps, and its chief, if not its only. value is the timber growing thereon, a part of which in the more elevated portions is pine, gum, and kindred growths, and, upon the large, swampy part of it, juniper and cypress. That a large part of the land is a worthless savannah. without appreciable value for timber and impossible of cultivation. That the timber which is found upon the land, especially

that in the swampy portions, is found in detached bodies, as islands and oases surrounded by worthless land."

Many of the witnesses speak of these oases as bunches of land and timber, varying greatly in size and in quality, separate at unequal distances from water courses. Besides this, within the exterior boundaries of this large tract many persons own and claim to own interior tracts, some of them of undefined extent. The prayer of the bill, in which M. H. Brown and the Phœnix Bank concur, is for the appointment of commissioners to divide the land, if it be capable of partition in severalty, or for a sale as a whole, and allotment of the proceeds. The other defendants pray for a sale, deeming an allotment in severalty impossible.

A very large number of witnesses were examined for both sides of the controversy. During the progress of the cause it was declared that the complainant had become in control of the shares of M. H. Brown and of the Phœnix National Bank, thus increasing its interest to one-sixth. When the cause came on to be heard on its merits the following decree was entered:

"This cause coming on to be heard and being heard on the depositions and other proofs, after argument of counsel, both for petitioners and defendants, it is now considered, adjudged, and decreed: (1) That the land described in the petition cannot be actually divided without great expense and injury to the tenants in common interested. (2) That the said land be sold at public auction at the court-house door in Manteo, Dare county, N. C., after advertising the same for thirty days in some newspaper published at Raleigh, N. C., Norfolk, Va., Baltimore, Md., New York, and Elizabeth City, N. C. Said land may, if the commissioner herein named deems the same feasible, be divided into five lots, by taking the natural and established points on Alligator river to the natural tributaries on the opposite boundary, and estimating the area of said lots. That, after selling or offering said land for sale in lots as aforesaid, the commissioners shall offer said land as an entirety, and report both sales as in lots and as an entirety. Parties bidding for said land shall within ten days deposit in the registry of this court, the Citizens' National Bank, ten per cent. of the bid made for a lot or the whole of said land, or a certified check for such amount.

"A. B. Andrews, Jr., of Raleigh, is appointed commissioner."

The complainant, with Brown and the Phœnix National Bank, excepted to this judgment, and obtained leave to appeal upon assignments of error. The first four of these go to the refusal of the court to make actual partition in severalty, and, instead thereof, ordering a sale of the whole tract. The fifth goes to certain errors in the admission and rejection of testimony. The sixth, in ordering a sale notwithstanding that it appeared that the shares of some of the defendants were incumbered by liens.

At the call of the case in this court the appellees move to dismiss the appeal because the judgment appealed from was not final. This question meets us on the threshold. The sole issue presented in the testimony upon the pleadings was, shall these lands sought to be partitioned be partitioned in severalty, or be sold for the purposes of partition, and the proceeds divided? The shares of the respective co-owners were set forth in detail, and not controverted. The result of the decree of the court is that the lands be sold and the proceeds divided, thus settling that issue. When the judgment is executed by a sale, nothing remains but to ascertain the shares

of the several parties by an arithmetical calculation. This comes within the test laid down by the supreme court for determining what is a final decree: A decree, to be final for the purposes of an appeal, must leave the case in such a condition that if there be an affirmance the court below will have nothing to do but to execute the decree it has already entered. Lodge v. Twell, 135 U. S. 232, 10 Sup. Ct. 745, 34 L. Ed. 153; Dainese v. Kendall, 119 U. S. 53, 7 Sup. Ct. 65, 30 L. Ed. 305. It must terminate the litigation on the merits. Bostwick v. Brinkerhoff, 106 U. S. 3, 1 Sup. Ct. 15, 27 L. Ed. 73; Ex parte Norton, 108 U. S. 237, 2 Sup. Ct. 490, 27 L. Ed. 709. The practical illustrations of the doctrine are shown in the following cases: In Thomson v. Dean, 7 Wall. 342, 19 L. Ed. 94, a decree deciding the right of the property in contest, directing it to be delivered by defendant to complainant by transfer, and entitling complainant to have the decree carried immediately into execution, was held a final decree, although it left to be adjusted accounts between the parties in pursuance of the decree settling the questions of ownership. See, also, Forgay v. Conrad, 6 How. 201, 12 L. Ed. 404. So, in Stovall v. Banks, 10 Wall. 583, 19 L. Ed. 1036, a decree adjudging a certain sum of money to be due from defendant to the complainant, and awarding execution to collect it, was held to be a final decree, although it allowed a subsequent deduction from the amount there adjudged of any note held by defendant against complainant. And a decree directing a sale of trust property, and that the proceeds be brought into court, was held to be final. Railroad Co. v. Bradley, 7 Wall. 575, 19 L. Ed. 274. It is familiar practice in the supreme court to entertain jurisdiction over appeals from an order for sale in the foreclosure in railroad cases, although very much remains to be done in the determination of questions as to distribution of the fund. Bronson v. Railroad Co. went up on such an appeal in 2 Black, 524, 528, 17 L. Ed. 347. It went up again in 1 Wall. 405, 17 L. Ed. 616, and again in 2 Wall. 283, 17 L. Ed. 725. In our opinion, the decree in this case was final for the purposes of appeal.

## As to the Merits.

The complainant and the two defendants whose interests it controls insist that a partition in severalty is perfectly feasible. This is a question of fact, considered and passed upon in the negative by the circuit court. The contention is renewed here, and the appellant asks that, if this allotment in severalty be not made as between all the parties, at least that its share, increased by the shares of the two defendants, its allies, be carved out and allotted to it, and that the remaining five-sixths be sold as the court has directed. We have carefully considered all the testimony in the record, and have reached the same conclusion as did the court below. This immense body of land is of very unequal value. Parts of it are almost, if not quite, valueless. The portions of it which have value vary in size, quality, and character and value of timber; are scattered over the tract; are at greatly unequal distances from water courses by which the timber, when cut, would reach the market.

It has over many portions of it adverse claims of various character, with uncertain boundaries. Even were the court to authorize the great expense of a survey of this whole tract, cause a plat to be made of it, and division made according to the plat,—even then no satisfactory division can be made, securing to each tenant an equal proportionate share. When a court of equity undertakes to make an allotment in partition, it asks the aid of commissioners, who should go on the land and examine it and apportion it, and if, in their judgment, or of that of a majority of them, it cannot be allotted in severalty without injury to all or to some of the co-owners, then to sell the land, and obtain the desired equality by getting its market value. This course has been pursued here, and is approved. Every objection applicable to a partition in severalty of this tract of land applies to the scheme of complainant to make a partial apportionment in severalty of one-sixth, and to sell the remainder. This would be so manifestly unjust to the other five-sixths as to need no discussion.

With regard to the fifth assignment of error, this is disposed of by the judge below in his rulings upon the record for appeal, and needs no consideration here.

With respect to the sixth assignment of error, we cannot perceive that any testimony was introduced respecting the alleged liens, and no rulings thereon or exceptions noted. Even if they were, it cannot affect this case. Such lien creditors, if any exist, were not parties to this suit, nor were they necessary parties. When the sale is made and the share ascertained, any creditor having a claim against one of the tenants in common can intervene and ask that the money allotted to his debtor be subjected to his claim. See French v. Gapen, 105 U. S. 509, 26 L. Ed. 951. This is the proper and usual practice.

The decree of the circuit court is affirmed, and the case remanded for such further proceedings as may be necessary.