MAYER et al. v. WHITE.

(Circuit Court of Appeals, Eighth Circuit. April 5, 1926.)

No. 6977.

1. **Appeal and error ⟨⟩80(4)—Decree rescinding contract of sale held final as to all matters pertaining to it, so as to require appeal based on time of its rendition for review of failure to give personal judgment, notwithstanding matters reserved for findings by master and decree thereon.**

Decree rescinding contract whereby W. sold to M. W.'s interest in the property of his partnership with C., making the amount paid to W. thereunder a charge on his interest, such property, with provision for sale thereof to satisfy such lien if said amount be not paid in stated time, *held* final as to all matters pertaining to the contract, and so to require appeal from it, based on the time of its rendition, for review of its failure to give personal judgment; the undetermined matters reserved for findings by master, and later decree thereon, namely, amount paid by M. on indebtedness of the partnership, accounting between W. and C. and amount due another company, being separate and distinct from that matter.

2. **Appeal and error ⟨⟩883—Appellants may not complain of order made with their consent.**

There is no merit in the contention of appellants that the court erred in authorizing the receiver to issue certificates to become first liens on the property in his hands; the necessity for the issuance growing out of contract or contracts made by appellants' agent for development of the property, and the order being made with their consent.

3. **Equity ⟨⟩429.**

A decree, equitable when made in not allowing personal judgment but only charge on property, will not be disturbed because of subsequent change in circumstances.

4. **Partnership ⟨⟩325(1)—Lien for money paid, given after appointment of receiver, by decree rescinding, for default in further payment, contract of sale of partner's interest, held not necessarily prior to any other lien.**

Lien on complainant's interest in property of his partnership with C., decreed to defendants for the money they had paid on contract of purchase of such interest, on decree for complainant, after appointment of receiver for partnership property, in his suit to cancel and rescind the said contract for default in a payment, and to dissolve and wind up the partnership, *held* not necessarily prior to any other lien, whatever its origin might be.

5. **Appeal and error ⟨⟩694(1).**

The testimony not being in the record, holding of the court below that it was sufficient to sustain the findings of the master cannot be held error.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by J. H. White against H. E. Mayer and others. From an adverse decree, said Mayer and certain other defendants appeal. Affirmed.

Truman Post Young and John J. Yowell, both of St. Louis, Mo. (Koerner, Fahey & Young, of St. Louis, Mo., on the brief), for appellants.

I. J. Ringolsky, of Kansas City, Mo. (M. L. Friedman, William G. Boatright, and H. J. Shultz, all of Kansas City, Mo., on the brief), for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and YOUMANS, District Judge.

YOUMANS, District Judge. On and prior to February 21, 1920, appellee, J. H. White, and S. R. McCorkle were partners under the name of McCorkle Drilling Company. The partnership owned oil and gas leases and drilling tools, tanks, and casings. On that date White contracted to sell to H. E. Mayer all his interest in the partnership property for $50,000, payable as follows: $1,000 on the execution of the contract; $4,000 on March 15, 1920; $20,000 on April 1, 1920, and $25,000 on May 1, 1920, Mayer agreeing to assume the partnership debts. After the execution of the contract, Mayer associated with him J. Lionberger Davis and William F. Fahey.

In March, 1920, the particular date does not appear, S. R. McCorkle, as party of the first part, and William F. Fahey, H. E. Mayer, and J. Lionberger Davis, as parties of the second part, referred to in the contract as the Syndicate, entered into a contract with reference to the property of the McCorkle Drilling Company. The contract recited:

(1) That McCorkle was the owner of certain oil and gas mining leases and certain tools, equipment, materials, and supplies subject to the interest of J. H. White.

(2) The sale by J. H. White of his interest in said property to H. E. Mayer for $50,000.

(3) The purpose of the Syndicate to form two corporations, one of which should be known as the McCorkle Drilling Company, which corporation should become the owner of the property, tools, materials, and supplies referred to, and should have a total capital stock of 750 shares of no par value, and the second corporation should be known as the Serena Petroleum Corporation, and should have a capital stock of 4,000 shares of no par value.

(4) That McCorkle and White operated a firm known as the McCorkle Drilling Company, which had obligations approximately of $20,000.

(5) That it was the desire of the Syndicate to furnish to each of the corporations the sum of $20,000.

The contract then provides:

(1) That McCorkle should sell to the two corporations all his interest in the leases, tools, etc.

(2) That Mayer should sell all his interest in the same property acquired from White to the corporations, except certain royalty units referred to in the White-Mayer contract.

(3) That the members of the Syndicate agreed to pay in cash to William F. Fahey the following sums: Davis $30,000, Mayer $10,000, Fahey $10,000, to be used by Fahey to pay off the obligations of the McCorkle Drilling Company, a partnership, approximating $20,000 assumed by the McCorkle Drilling Company, a corporation, and $25,000 to be paid on behalf of the Serena Petroleum Corporation as follows: $1,000 to Mayer, the amount paid by him to White, $4,000 to be paid on March 15, 1920, to White, and $20,000 to be paid White on April 1, 1920, the remainder to be paid by Fahey into the treasury of the McCorkle Drilling Company, a corporation.

(4) Mayer agreed to pay White on May 1, 1920, the balance due under the contract between them, with the proviso that, if Mayer did not pay that sum to White on May 1, 1920, the members of the Syndicate should pay the same, in which event the royalty units purchased by Mayer from White, together with other units held by McCorkle, should be divided among the members of the Syndicate and McCorkle in a certain named proportion.

(5) That Mayer and Fahey should execute to Davis their note for $30,000, and that the two corporations should execute their note to Fahey and Mayer for $50,000.

(6) That upon the organization of the two corporations all the corporate stock of the two corporations should be deposited to secure the note of $50,000, and upon the payment of said note the stock should be distributed one-fourth to McCorkle, one-fourth to Mayer, one-fourth to Fahey, and the remaining one-fourth to be divided among the three members of the Syndicate. The corporations were organized; the property was taken possession of by McCorkle and the

three members of the Syndicate and turned over to the corporations as provided in the contract. The contract between White and Mayer contained the following provision:

"It is further understood and agreed by and between the parties hereto that, in the case of the failure to pay any of these payments when due, the same are to draw interest at the rate of 8 per cent. per annum from maturity, and that, in the case of failure of the party of the second part to carry out its terms of this agreement with respect to the payment of any and all sums when due, any and all sums theretofore paid shall be forfeited to the use of the party of the first part as liquidated damages, and this contract shall become null and void."

The first three payments stipulated in the contract for $25,000 in the aggregate were made. The last payment due May 1, 1920, was not made. On May 21, 1920, White served notice on Mayer that the contract would be canceled and that the amount paid him would be forfeited pursuant to the terms of the contract.

On September 13, 1920, White brought suit against McCorkle, Mayer, Davis, Fahey, and Serena Petroleum Corporation, and McCorkle Drilling Company, a corporation, et al., in the District Court of the United States for the District of Kansas for two purposes: First, the dissolution and winding up of the partnership composed of White and McCorkle under the name of McCorkle Drilling Company; and, second, the cancellation and rescission of the contract of February 21, 1920, between White and Mayer. Upon the filing of the bill, a receiver was appointed to take charge of the partnership property. The case came on for trial, and on October 27, 1920, the court below rendered a decree in which the following matters were decided:

(1) The rescission and cancellation of the contract between White and Mayer of February 21, 1920.

(2) A charge of $25,000 in favor of Mayer, Davis, Fahey, Serena Petroleum Corporation, and McCorkle Drilling Company, a corporation, upon the interest of White in the partnership property being the amount paid White on his contract with Mayer. The decree on that point reads as follows:

"That the defendants H. E. Mayer, J. Lionberger Davis, William F. Fahey, Serena Petroleum Corporation, and McCorkle Drilling Company, a corporation, are hereby given a lien on the interest of the complainant, J. H. White, in and to all the oil and gas leases, royalty, and production, and the as- sets owned by the copartners composed of the complainant and S. R. McCorkle; and said interest of the complainant J. H. White is hereby charged with a lien in the sum of $25,000 and interest from this date at the rate of 6 per cent. per annum until said sum is paid, and unless paid within 60 days from the date of this decree herein the receiver as special master of this court appointed in this cause is hereby authorized and directed to sell the interest of said complainant, J. H. White, in said assets to satisfy and liquidate said lien in such manner as the court may hereafter direct."

(3) That the net amount of debts of McCorkle Drilling Company, a partnership, paid by Mayer, Davis, and Fahey, be ascertained by the master and declared a lien on the assets owned by White and McCorkle, and, if the sum so ascertained was not paid within 60 days after the date of the decree, then the receiver as special master was authorized to sell said assets to satisfy such lien in such manner as the court might thereafter direct.

(4) S. R. McCorkle was decreed to be the owner of a certificate of 194 units of a certain royalty, subject to a lien in favor of White.

(5) That an accounting be had between White and Mayer as partners, and, unless the sum found due by either of them upon such an accounting was paid within 60 days after the date of the decree, the interest of the debtor partner was to be sold as the court might thereafter direct, and that the creditor partner have a judgment against the debtor partner for any amount due after the sale of the debtor property.

(6) A master was appointed to take testimony and make findings of fact and conclusions of law and report a proposed decree with regard to the following undetermined matters:

"(a) To ascertain the net amount paid by the defendants H. E. Mayer, William F. Fahey, J. Lionberger Davis and Serena Petroleum Corporation, and the McCorkle Drilling Company, in liquidation of partnership debts of the firm known as McCorkle Drilling Company, a copartnership, composed of complainant and S. R. McCorkle, and all sums expended by defendant S. R. McCorkle under contract made with the said defendants.

"(b) To take an accounting between the complainant, J. H. White, and the defendant S. R. McCorkle, partners as the McCorkle Drilling Company, to determine the amounts

invested by each in said firm, and the amount, if any, due from one of said parties to the other, as well as to determine the exact assets of said firm and the interest of each partner in the same.

"(c) To ascertain, audit, and determine the exact amount due the defendant the Red Star Oil Company on account of drilling wells on leased land described herein, under contracts made for drilling on the same."

The court made the following reservation:

"The court reserves jurisdiction of this cause for the making of such orders as the continuing preservation of the property and the protection of the parties may require."

The master filed his report on November 15, 1923. On November 26, 1923, appellees filed exceptions to that report. The first exception reads as follows:

"That the said report errs, in that it does not recommend that a personal judgment and decree be entered in favor of said defendants and against the complainant, J. H. White, for the sum of $25,000; said sum having been paid by said defendants to the complainant on account of his contract with H. E. Mayer which was set aside."

The exceptions were overruled on February 8, 1924. With reference to the exception above quoted, the court said:

"This suit, brought many years ago, resulted in a final decree in favor of complainant setting aside a contract of sale of certain oil and gas leases on terms and conditions therein expressly stipulated and directing an accounting be taken among the several parties in interest.

"The property involved in this suit as originally brought was placed in the hands of a receiver. The receivership was by consent of parties extended from time to time over other interests that a full and complete settlement of the rights of all parties therein might be decreed, the properties were sold, the account among the parties stated, and the proceeds remain awaiting distribution. The exceptions taken to the final report of the special master now before the court contain, first, an attempt to challenge the original decree canceling and annulling the contract as between complainant in the suit and what is known as the St. Louis parties taking the exceptions now under consideration. However, as the final decree has now stood for more than four years, and hitherto unchallenged or excepted to on this ground, all such exceptions should be overruled and denied.

"However, it may be said, as the proper-ty was, at the time the final decree, setting aside the contract of sale of the leases, was entered, of large value, and as the claimant could have had the interest of complainant in the property sold at any time after 60 days from the date of the decree in satisfaction of the demand, had it been so desired, but as he did not do so, if any loss now accrues it is because of neglect to timely enforce the decree in this respect. There would be no equity in now distributing (disturbing) a decree of such long standing heretofore unchallenged. Hence, in this respect, for many reasons, the exception taken to the failure to render a personal decree against complainant for the $25,000 paid under the terms of the contract, is denied."

A decree confirming the master's report was entered March 10, 1924. Supplemental decree was entered on April 9, 1924, setting out by name the parties who were entitled to dividends and making an order with regard to costs.

[1] The first error assigned by appellants, reads as follows:

"Said United States District Court for the Second Division of the District of Kansas erred in failing and refusing to find in the decree entered on the 27th day of October, 1920, that the above-named defendants, appellants, were entitled to a personal judgment and decree against the complainant, J. H. White, for the sum of $25,000, said sum having been paid by said defendants to the complainant on account of his contract with H. E. Mayer, which the court set aside, which said error was reaffirmed in final decree entered on the 10th day of March, 1924."

The question presented in that assignment is whether the decree of October 27, 1920, was final as to the matter of a personal judgment against White for $25,000.

The portion of the decree relating to that matter reads as follows:

"This cause came on before the court for trial by agreement of all the parties, the parties herein having agreed to dismiss the cause of S. R. McCorkle, against William F. Fahey, pending in the District Court of Marion county, Kan., and the case of H. E. Mayer v. J. H. White, pending in the District Court of the United States for the Western Division of the Western District of Missouri, and agreeing that all of said causes may be consolidated and all of said parties claiming any right, title, or interest in the property hereinafter described, came into this court to have the matter fully determined and said parties having come herein, filed their plead-

ings in due time and said cause having been tried and the court having heard the evidence and the arguments of counsel and thereupon, upon consideration thereof, it is by the court ordered, adjudged, and decreed as follows:

"First. That the written contract made and entered into by and between the complainant, J. H. White, and defendant H. E. Mayer, on the 21st day of February, 1920, wherein, for a consideration of $50,000, to be paid the complainant, White, he agreed to convey to the defendant Mayer all his right, title, and interest in and to the following described oil and gas lease, and also one-half of a one-eighth royalty on the following described oil and gas lease, to wit: [Description of property]— and also agreed to convey all of the right, title, and interest of one John Emmke in and to said royalty, after the same was procured by the said White, together with certain tools, machinery, equipment, and other personal property, which said contract was breached by the defendants, H. E. Mayer, William F. Fahey, J. Lionberger Davis, Serena Petroleum Corporation, and McCorkle Drilling Company, a corporation, in failing to pay the balance due to J. H. White, of $25,000 under said contract, within the time therein provided. The court finds that time was of the essence of said contract, and the balance to be paid thereunder was not tendered until some months after written notice of cancellation had been served on the defendants and until a producing oil well had come in on the property. Said contract is adjudged by the court to be rescinded, canceled, set aside, and for naught held, and the said defendants H. E. Mayer, William F. Fahey, J. Lionberger Davis, Serena Petroleum Corporation, and McCorkle Drilling Company, a corporation, are hereby adjudged to have no right, title, or interest in and to the property above described, and said defendants, their agents, representatives, and assigns, are hereby enjoined and restrained from claiming or asserting any title in, or interfering with the possession on the part of the complainant of his interest in, the property described in said contract of February 21, 1920, and are hereby divested of any and all ownership of the interest of the complainant, J. H. White, in the assets heretofore or now owned by the firm of McCorkle Drilling Company.

"Second. That the defendants H. E. Mayer, J. Lionberger Davis, William F. Fahey, Serena Petroleum Corporation, and McCorkle Drilling Company, a corporation, are

hereby given a lien on the interest of complainant, J. H. White, in and to all the oil and gas leases, royalty, and production and the assets owned by the copartners composed of the complainant and S. R. McCorkle; and said interest of the complainant, J. H. White, is hereby charged with a lien in the sum of $25,000, and interest from this date, at the rate of 6 per cent. per annum until said sum is paid, and, unless paid within 60 days from date of this decree herein, the receiver as special master of this court appointed in this cause is hereby authorized and directed to sell the interest of said complainant, J. H. White, in said assets to satisfy and liquidate said lien in such manner as the court may hereafter direct."

By this decree the contract was rescinded, and the amount paid to White thereunder was made a charge on his interest in the partnership property. No personal judgment was rendered against him. If this was error, it could have been corrected only by the trial court within the term, or by the appellate court on appeal taken within the time allowed by the statute.

That matter was separate and distinct from the undetermined matters which were expressly named to be, first, the ascertainment of the amount paid by Mayer and his associates on the indebtedness of the McCorkle Drilling Company, a partnership; second, the accounting between White and McCorkle; and third, the amount due the Red Star Oil Company.

The decree was final as to all matters pertaining to the contract of February 21, 1920, between White and Mayer. The rights of the parties in that regard had all been settled, and nothing remained to be done by the court but to make the sale and pay out the proceeds. The property was ascertained and the amount of the lien determined. North Carolina Railroad Co. v. Swasey, 23 Wall. 405, 409, 23 L. Ed. 136; Chase v. Driver, 92 F. 780, 34 C. C. A. 668; East Coast Cedar Co. v. People's Bank, 111 F. 446, 449, 49 C. C. A. 422; Winthrop Iron Co. v. Meeker, 109 U. S. 180, 3 S. Ct. 111, 27 L. Ed. 898; Hill v. C. & E. Rd. Co., 140 U. S. 52, 11 S. Ct. 690, 35 L. Ed. 331; Forgay v. Conrad, 6 How. (47 U. S.) 201, 12 L. Ed. 404; Jackson v. Jackson, 175 F. 710, 99 C. C. A. 286; Minnesota & Ontario Paper Co. v. Swenson Evaporating Co. (C. C. A.) 281 F. 622; Felker v. Southern Trust Co (C. C. A.) 264 F. 798; City of Des Moines v. Des Moines Water Co., 230 F. 570, 144 C. C. A. 624.

The decree to be proposed by the master was to be based upon his finding with reference to the amount paid by Mayer and his associates on the debts of the McCorkle Drilling Company, a partnership, a statement of an account between the partners White and McCorkle, and the amount due the Red Star Oil Company. This appeal was taken June 6, 1924, three years seven months and nine days after the rendition of the decree of October 27, 1920. As already indicated, as to the matter of a personal judgment against White for the $25,000, paid him on the contract of February 21, 1920, this appeal was too late.

What has been said disposes of the first, second, fourth, seventh, twelfth, and fourteenth specifications of errors relied upon by appellants.

[2] The fifth specification of error is stated as follows:

"Said court erred in the order of the 23d day of October, 1923, in authorizing the receiver to issue receiver's certificates to become a first and prior lien upon the properties in the receiver's hands superior to the lien which the court had previously decreed the defendants were entitled to secure to them the repayment of the $25,000, and all moneys advanced for the payment of debts of the McCorkle Drilling Company, a copartnership, which said error was reaffirmed in the final decree of March 10, 1924."

The record does not show an order made on October 23, 1923. It does show an order made on October 23, 1920, four days before the decree of October 27, 1920. Neither in their brief nor in their oral argument do counsel for appellants maintain that the authorization for the issuance of receiver's certificates was made subsequent to the decree of October 27, 1920. The argument now is that the effect of such authorization was to permit the receiver to speculate with the assets in his hands.

The order recites that it was made on the intervening petition of the defendants Red Star Oil Company, A. P. Campbell, and the Kansas Land & Development Company. It recited that there was no controversy respecting the one-eighth royalty interest of the owners of the fee title in certain land described, in Marion county, Kan., and that of the remaining seven-eighths of the oil and gas produced pursuant to the lease upon said land. It was conceded that the Red Star Oil Company was the owner of an undivided seven-sixteenths, and that the defendant A. P. Campbell was the owner of an undivided one-

sixteenth, and that the defendants Hollingsworth and Hippee were jointly the owners of an undivided one-sixteenth, and that the receiver represented the ownership of an undivided seven-sixteenths.

The order then proceeds as follows:

"It is further conceded by the parties that the owners of the respective interests are under obligation in proportion to their respective interests to pay all of the expenses of developing and operating said lease, which have been incurred after the first well thereon was drilled and that the amount thereof should be determined by the master to be appointed in this cause; that for the payment of such sums the party or parties advancing the same should be given a lien on said lease, and upon the drilling equipment and machinery thereon, and upon the proceeds of the oil sold therefrom, except a certain interest amounting to $20,000 hereinafter referred to."

The receiver was authorized to borrow $25,000, or so much thereof as might be necessary, and to secure the same by the issuance of his certificates of indebtedness. With reference to that indebtedness, the order contains the following provisions:

"Said indebtedness shall be incurred for the sole benefit of the partnership estate, and the receiver is directed to pay to the Red Star Oil Company such amounts as may be found by the master, subject to the approval of the court, to be owing to it on account of the development and operation of said lease above described and as above set out."

After stating that this lease was burdened with a drilling obligation to drill a well within nine months, counsel for appellants on page 69 of their brief say:

"In order to save the situation for all parties, Fahey made a contract with the Red Star Oil Company in order to get a well drilled, and this contract was ratified by White. The result was that a one-half interest in this lease was transferred to the Red Star Oil Company under the necessities of the case."

With reference to the same matter, and the action of Mr. Fahey with regard thereto, counsel for appellants, on page 103 of their brief, say:

"He made a contract with the Red Star Oil Company whereby he had to surrender a one-half interest to the Red Star Oil Company in order to get the necessary drilling done on the Bothwell lease, and he undertook other drilling and other operations upon other properties. Such leases as the part-

nership had, of course, had to be protected. It was necessary to drill upon them or to pay rental."

It thus appears (a) that the necessity for the issuance of receiver's certificates grew out of a contract or contracts made by appellants' agent for the development of the property, (b) that the order was made with the consent of appellants, and (c) that the order was a final order from which no appeal was taken.

Regardless of the lapse of time, it is clear that there is no merit in appellants' contention with reference to this matter.

[3] The third specification of error reads as follows:

"Said court erred in failing and refusing to find, in the decree entered October 27, 1920, that these defendants, appellants, were entitled to a personal judgment and decree against the complainant, J. H. White, for the full amount of all moneys advanced by these defendants in order to pay the debts of the McCorkle Drilling Company, a copartnership, which said error was reaffirmed in the final decree entered on the 10th day of March, 1924."

In the decree of October 27, 1920, it was provided that the master should ascertain the amount paid by appellants on the debts of the McCorkle Drilling Company, a partnership, and that the amount so found should be a charge on the partnership property in favor of appellants.

The master found that the total amount so paid was $18,814.42. This amount was reduced by the master to $3,245.51 by various credits stated in his report.

Appellants and McCorkle had had possession of and had operated the property since the purchase of White's interest by Mayer, until the appointment of a receiver. They made the contract with the Red Star Oil Company, by which, as already stated, it acquired an interest in a certain lease. They had also made other contracts at the time the original decree was rendered. It appeared that the property was of sufficient value to reimburse appellants for all they had expended as purchase price, and on account of debts paid by them. In their answer they had stated their willingness to pay the balance due White under his contract with Mayer. In the decree, the sums paid under the contract were not declared forfeited as the contract provided. A long period intervened between the date of the decree and the sale of the property. The interests of parties other than appellants and appellee had to be determined. A receiver had been appointed for the Red Star Oil Company, and its affairs became involved with those of the receivership of the McCorkle Drilling Company, a partnership. A producing well had been brought in, but not in the quantity anticipated. The property did not bring enough to pay the costs of the receivership and the liens of appellants.

It would be inequitable to disturb a decree now that was equitable at the time it was rendered.

[4] Specifications of errors 6, 7, and 8 are directed to the orders by which the receiver was authorized to sell the property free of liens, and to the order confirming the sale made thereunder. The sale was reported February 14, 1922, and was confirmed by the court on February 16th thereafter. The only objection to the order made at the time appears in the record following the order of confirmation as follows:

"To the making of this order William F. Fahey of St. Louis, Mo., objects, unless Mr. White first pay into court the sum of $25,-000, which objection was overruled and excepted to at the time."

This objection is the basis of the specifications above referred to. In effect the contention is that the lien of $25,000 should be prior to any other lien, whatever its origin might be. We are unable to accept this view.

[5] Specifications of errors 10 and 11 are directed to the report of the master and to the order of the court confirming the same, with regard to the treatment and disposition of expenses of operation between February 21, 1920, when appellants and S. R. McCorkle took charge of the property, and the date of the appointment of the receiver. The substance of appellants' objection on this point is that they should be reimbursed for all moneys expended by them during that period, regardless of whether such expenditures resulted in benefit to the property or not. The obligations resulting from appellants' operations appear in the master's report. The testimony taken by the master is not in the record. On the exceptions to the report, the court below held that the testimony was sufficient to sustain the findings of the master. In the absence of the testimony, this court cannot say that such holding was error.

The thirteenth specification of error reads as follows:

"The court erred in the distribution of costs in the supplemental decree of April 9, 1924, and in assigning a grossly excessive proportion of said costs against these ap-

pealing defendants, and in not ruling that all costs should be paid out of the funds in the hands of the receiver."

In the original decree of October 27, 1920, the following order was made with regard to costs:

"That the costs which have already accrued and may hereafter accrue be apportioned as follows: Complainant to pay one-fourth, the defendant S. R. McCorkle to pay one-fourth, the defendants H. E. Mayer, William F. Fahey, J. Lionberger Davis, Serena Petroleum Corporation, and McCorkle Drilling Company to pay one-half, * * * and judgments are hereby rendered against each of said parties for the amount apportioned against them."

The supplemental decree of April 9, 1924, contains this provision with regard to costs: "The receiver is further directed to pay to complainant, on account of costs advanced by complainant and charged and assessed against the defendants William F. Fahey, H. E. Mayer, J. Lionberger Davis, Serena Petroleum Corporation, a corporation, and McCorkle Drilling Company, a corporation, the cash dividend ordered paid said defendants as hereinabove set forth, the same to be credited on judgments rendered in this cause against said defendants in favor of the complainant for their portion of costs accruing in same."

The supplemental decree of April 9, 1924, simply confirmed the original decree of October 27, 1920. That division of costs does not appear to be inequitable.

We have carefully studied the record in this case in the light of the specifications of error, and are convinced that no error has been committed.

The three decrees complained of are therefore affirmed.